**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE NANETTE MARIE SISK,
*Debtor*,

———————————

NANETTE MARIE SISK,
*Appellant*.

No. 18-17445

D.C. No.
5:16-bk-50548

IN RE MARK IRVIN CANDALLA,
*Debtor*,

———————————

MARK IRVIN CANDALLA,
*Appellant*.

No. 18-17446

D.C. No.
5:16-bk-50659

IN RE JERI LYLE SALDUA MERCADO,
*Debtor*,

———————————

JERI LYLE SALDUA MERCADO,
*Appellant*.

No. 18-17447

D.C. No.
5:16-bk-50651

IN RE DENNIS MICHAEL ESCARCEGA,
                                    *Debtor*,

DENNIS MICHAEL ESCARCEGA,
                                    *Appellant*.

No. 18-17448

D.C. No.
5:16-bk-50368

OPINION

Appeal from the Bankruptcy
Appellate Panel for the Ninth Circuit

M. Elaine Hammond and Stephen L. Johnson,
Bankruptcy Judges, Presiding

Argued and Submitted March 6, 2020
San Francisco, California

Filed June 22, 2020

Before: Kim McLane Wardlaw, Milan D. Smith, Jr.
and Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

# SUMMARY*

## Bankruptcy

The panel affirmed in part and reversed and vacated in part the Bankruptcy Appellate Panel's decision refusing to allow confirmation of four Chapter 13 debtors' plans with an estimated duration, and the bankruptcy court's subsequent confirmation of plans with a fixed duration.

Neither the bankruptcy trustee nor any unsecured creditor objected to debtors' plans. The BAP affirmed the bankruptcy court's rejection of the initial plans as in violation of the Bankruptcy Code and not proposed in good faith. On remand, the bankruptcy court confirmed plans with a fixed duration. This court then granted debtors' certifications for direct appeal.

The panel held that even though only the debtors challenged the bankruptcy court's ruling, the panel had jurisdiction to consider their appeal because they suffered an "injury in fact" sufficient to confer standing. The panel held that, as the only parties, the debtors need not establish prudential standing. Further, the lack of an appellee did not deprive the panel of jurisdiction, and the lack of an objection by creditors did not insulate the bankruptcy court from appellate review or abrogate debtors' rights to challenge plan provisions that could detrimentally affect their interests.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Reversing, the panel held that when there is no objection, a bankruptcy plan need not include a fixed duration because no express provision of Chapter 13, even when viewed in the context of its broader structure, prohibits plans with estimated lengths. The panel concluded that neither 11 U.S.C. § 1322 nor § 1325 points to an express fixed or minimum duration requirement for Chapter 13 plans absent an objection, and neither provision prohibits estimated term plans. Read together, the Bankruptcy Code provides for a maximum duration for all plans and a minimum duration for objected-to plans. The panel concluded that the clear implication of this framework was that, for plans with no objection, the Code provides no minimum or fixed durations. The panel concluded that the Code's structure also supported a debtor's ability to include estimated terms, and allowing estimated terms would not nullify a trustee's or creditor's modification rights under 11 U.S.C. § 1329.

The panel vacated the BAP's ruling that the debtors' proposed their initial plans in bad faith.

Affirming in part as to the BAP's holding regarding the bankruptcy court's confirmation procedures, the panel held that the bankruptcy court did not fail to hold a confirmation hearing within the timeframe prescribed by the Code and properly exercised its discretion by deferring consideration of debtors' estimated-duration provisions until it could adequately address them.

The panel affirmed in part, reversed and vacated the BAP's decision in part, and remanded for further consideration.

## COUNSEL

Norma L. Hammes (argued), James J. Gold, and Lucinda L.H. Gold, Gold and Hammes, San Jose, California, for for Debtor-Appellants Nanette Marie Sisk, Mark Irvin Candalla, and Dennis Michael Escarcega.

James S.K. Shulman (argued), Shulman Law Offices, San Jose, California, for Debtor-Appellant Jeri Lyle Saldua Mercado.

Jane Z. Bohrer (argued), Los Gatos, California, for Amicus Curiae Devin Derham-Burk.

## OPINION

BUMATAY, Circuit Judge:

Absent an objection, Chapter 13 of the Bankruptcy Code establishes no minimum duration for a bankruptcy plan. Debtors are thus free to propose a bankruptcy plan lasting any amount of time up to the statutory maximum period of three or five years.  *See* 11 U.S.C. § 1322(d).[1]  In this case, we consider whether the Code allows debtors to confirm a plan with an *estimated* duration.  The Bankruptcy Appellate Panel ("BAP") held that it does not.  We disagree.

---

[1] All statutory citations are to Title 11 unless otherwise indicated.

## BACKGROUND

To file for Chapter 13 bankruptcy, a debtor must propose a plan to use future income to repay a portion of debts within the Code's maximum duration. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1690 (2015). If the plan is confirmed and the debtor succeeds in carrying it out, the debtor is entitled to a discharge of the debts according to the plan. *Id.*

Between February and March of 2016, Dennis Michael Escarcega, Nanette Marie Sisk, and Mark Irvin Candalla ("Debtors") filed petitions for Chapter 13 bankruptcy.[2]

Before 2016, the San Jose Division of the Northern District of California Bankruptcy Court used a preprinted model Chapter 13 plan that expressly permitted a debtor to propose a plan with an estimated term of months. In February of 2016, bankruptcy judges of the San Jose Division began requiring debtors to use the Northern District of California's new Model Chapter 13 Plan ("Model Plan"). Unlike the previous plan, the new Model Plan omitted any reference to an estimated plan duration and instead allowed only a fixed number of months to be proposed for plan length.

---

[2] One other debtor involved in the proceedings below, Eugene Edward Vick, passed away in 2017, and his Chapter 13 case was dismissed. Additionally, Jeri Saldua Mercado's appeal is mooted, as he completed his Chapter 13 case while this appeal was pending.

Under § 1.01 of the Model Plan, a debtor commits to make set payments to the trustee for a certain number of months, as shown below:

> **Plan payments.** To complete this plan, Debtor shall:
>
> a. Pay to Trustee $____555____ per month for _60___ months from the following sources: (describe, such as wages, rental income, etc.): As shown on Schedule I _____. Debtor shall after _____ months, increase the monthly payment to $_____ for _____ months.

> c. The monthly plan payments will continue for _60___ months unless all allowed unsecured claims are fully paid within a shorter period of time. This plan cannot propose monthly payments beyond 60 months.

Candalla Plan 1, § 1.01(a) and (c).

Under § 2.12 of the Model Plan, a debtor must specify the amount he will pay unsecured creditors on a pro-rata basis after satisfying all other claims, as shown below:

> **2.12.  Class 7: All other unsecured claims.** These claims, including the unsecured portion of secured recourse claims not entitled to priority, total approximately $_____60,348__. The funds remaining after disbursements have been made to pay all administrative expense claims and other creditors provided for in this plan are to be distributed on a pro-rata basis to Class 7 claimants.
> **[select one of the following options:]**
>
> ____  **Percent Plan.** Class 7 claimants will receive no less than __% of their allowed claims through this plan.
>
> ____  **Pot Plan.** Class 7 claimants are expected to receive __% of their allowed claims through this plan.

Candalla Plan 4, § 2.12.

The Model Plan expressly authorizes a debtor to propose additional provisions that modify the preprinted text so long as those provisions are consistent with the Code.

Debtors' bankruptcy plans largely conformed to the Model Plan, but deviated from it in two significant ways. First, Debtors added provisions replacing § 1.01's fixed durational language with estimated time periods. In their

amendments, Debtors changed this provision with the following language:

> Section 1 of the plan is modified as follows:
> a. The length of the plan as reflected in the cumulative terms of the monthly payments provided in Section 1.01(a) is the estimated length of the plan.
> b. The first sentence of Section 1.01(c) is deleted.

Candalla Plan 6, § 5.02.

Second, Debtors sought to amend § 2.12's default dividend provision. Instead of choosing between the options presented in the Model Plan, Debtors added an alternative provision:

> Section 2 of the plan is modified as follows:
> a. Section 2.08 is deleted.
> b. Section 2.12 is modified to add the following, if checked here:
> ☑ Class 7 claimants shall receive an aggregate dividend of $_____0____, which amount can be increased by up to $1.00 to an amount sufficient for the trustee to administer payments on these claims, which shall be shared pro-rata based on the amounts of their respective allowed nonpriority unsecured claims.

Candalla Plan 6, § 5.03.

Neither the trustee nor any unsecured creditor objected to Debtors' plans. The bankruptcy court then held an initial confirmation hearing for each of the Debtors within 45 days of their meetings of creditors. *See* 11 U.S.C. § 1324(a)–(b). Ordinarily, if a plan draws no objections and complies with the Code, the court confirms it at an initial confirmation hearing. Due to the amendments in Debtors' plans, however, the bankruptcy court transferred their cases to the Trustee's Pending List. Cases placed on this list are monitored by the trustee, then returned to a normal confirmation timeline once any outstanding issues are resolved.

Debtors then filed motions requesting confirmation of their plans and set hearings on the bankruptcy court's contested confirmation calendar. The court scheduled

several additional hearings to determine the confirmability of Debtors' plans. First, the court held individual hearings with each of the Debtors on May 19, 2016. At these hearings, the court discussed Debtors' amendments. Next, the court scheduled additional evidentiary hearings on confirmation for late July 2016, citing the "complexity of the issues, the absence of a Trustee objection, and the need for certain factual findings."

Before the bankruptcy court, several of the Debtors raised procedural objections to the length of the court's confirmation process. They protested that the additional hearings fell outside the 45-day window for confirmation hearings. *See* 11 U.S.C. § 1324(b). Additionally, Debtors argued that transferring their cases to the Trustee's Pending List constituted a de facto local rule that violated federal law.

In a consolidated joint memorandum decision, two judges of the bankruptcy court for the Northern District refused to confirm Debtors' plans because of the additional provisions. First, the court rejected Debtors' procedural objections. The court ruled that moving cases to the Trustee's Pending List did not violate federal law, and enabled the court to carry out its duty to review plans submitted under the Code. *In re Escarcega*, 557 B.R. 755, 763 (Bankr. N.D. Cal. 2016). The court also ruled that 11 U.S.C. § 1324(b) only required a hearing, not a "substantive or conclusive" hearing, within the prescribed timeframe. *Id.* at 762–63.

The bankruptcy court also rejected the amendments to Debtors' plans, despite recognizing that they were consistent with the way "certain plans in the San Jose Division have been administered in the recent past." *Id.* at 764. The court ruled that Debtors' amendments calling for estimated plan durations violated the Code, which "read fairly, provides that

a debtor will specify a length for their plan and will carry that plan out." *Id.* at 775. The bankruptcy court reasoned that plans with no specific duration were impermissibly "self-modifying," in violation of §§ 1328(a) and 1329(b), because such provisions "construct a plan that authorizes modifications without notice to parties in interest eliminates creditor's rights to object to the modification." *Id.* at 771.

Finally, the bankruptcy court held that Debtors' proposed plans made "the careful structure and protections of the Bankruptcy Code ephemeral" and rendered creditors' modification rights under 11 U.S.C. § 1329 "illusory." *Id.* at 775. Additionally, the court accused Debtors of "obtain[ing] the Trustee's agreement to the additional provisions so as to avoid an objection" to the application of 11 U.S.C. § 1325(b)'s specific commitment period. *Id.* at 775–76. On this basis, the court ruled that Debtors' plans were not proposed in good faith. *Id.* at 776.

On appeal, the BAP affirmed the bankruptcy court, ruling that Debtors' plans violated the Code and were not proposed in good faith. The BAP sharply criticized the trustee's decision not to object to Debtors' additional terms. *In re Escarcega*, 573 B.R. 219, 233–235 (B.A.P. 9th Cir. 2017).

Debtors filed certifications to appeal directly to this court, which we denied as interlocutory. Now back in the bankruptcy court, Debtors removed the offending estimated duration provisions, re-filed their plans, and had them confirmed with a fixed duration.

Debtors elected to appeal the confirmations of their bankruptcy plans in the district court rather than the BAP, and simultaneously filed certifications for direct appeal in this court. *See* 28 U.S.C. § 158(d)(2)(A). We granted

Debtors' certifications for direct appeal, and later consolidated Debtors' cases into the current proceeding. Debtors' appeals were dismissed in the district court without prejudice to their appeals before us.

## DISCUSSION

### I.

We review the denial of Debtors' original plans here. To obtain final, appealable orders, Debtors filed new plans with the unwanted fixed duration and appealed from the confirmation of the amended plans. *See Bullard*, 135 S. Ct. at 1692–93. But we may review the bankruptcy court's rejection of their initial plans and the BAP's affirmance of the amended plan as part of this appeal. *See Bank of New York Mellon v. Watt*, 867 F.3d 1155, 1159–60.

We review the legal conclusions of the BAP de novo. *In re Leavitt*, 171 F.3d 1219, 1222 (9th Cir. 1999). Because the BAP's decision is based on the bankruptcy court's order, we review the bankruptcy court's conclusions of law de novo and its factual findings—including those related to good faith—for clear error. *Id.* The bankruptcy court's evidentiary rulings, including its decision of whether to hold evidentiary hearings, are reviewed for abuse of discretion. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 939–40 (9th Cir. 2007).

### II.

This case presents the somewhat unusual circumstance in which only one side, composed of the Debtors, appears before us to challenge the bankruptcy court's ruling. Given this unique posture, we must first assure ourselves that we have jurisdiction to consider their appeal. *See Bates v.*

*United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007) (en banc).

## A.

The Constitution restricts our jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Standing is an "essential and unchanging part" of this limitation.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The doctrine of standing requires that a party demonstrate (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.  *Id.* at 561.  These requirements are the "irreducible constitutional minimum of standing."  *Id.* at 560–61.

To demonstrate "injury in fact," the pleaded injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.*  A "concrete" injury must actually exist; it must be "real" and not "abstract," "remote," or "speculative."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  It need not, however, be tangible.  "The violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."  *Spokeo*, 136 S. Ct. at 1549.  A "particularized" injury must affect a plaintiff in "a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

The key question here is whether Debtors have shown an "injury in fact": the "[f]irst and foremost" of standing's three elements.  *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 103 (1998).  We are convinced that Debtors' current and ongoing injuries meet this test.

Debtors identify three rights allegedly abridged by the bankruptcy court's denial of their original plans: (1) the right to file their own initial plans under § 1321; (2) the right to confirmation of their plans under § 1325; and (3) the right to discharge once plan payments have been completed under § 1328.

In practical terms, Debtors assert that the bankruptcy court's rejection of their proposed bankruptcy plans will cause them economic harm. Under their original plans, Debtors specified a fixed dividend to unsecured creditors of zero dollars ($0) and an estimated plan duration. Debtors argue that they could have exited bankruptcy easily with these plans, requesting discharge "as soon as" their priority and secured creditors' debts were paid off. *See* § 1328(a). By contrast, Debtors must now either: (1) continue in bankruptcy for the duration of the fixed period required by their court-confirmed plans (regardless of their satisfaction of priority and secured obligations); or (2) request and obtain a plan modification, subject to the notice provisions of § 1329, to shorten the duration of the plan. *See In re Fridley*, 380 B.R. 538, 544 (B.A.P. 9th Cir. 2007) (holding that when a confirmed plan specifies a fixed term, "[a] debtor desiring to prepay a chapter 13 plan and obtain an early discharge without paying allowed unsecured claims in full must follow the § 1329 modification procedure."). Thus, Debtors now face a procedural burden not required by the original plans.

As a result, Debtors maintain that they will be stuck in bankruptcy for the length of the fixed period, even if they pay off all listed priority and secured debts before that period elapses. With the fixed duration, Debtors can be forced to make additional payments beyond what they would have under their original plans. During the additional time that their plans remain in effect, Debtors contend, they will be

vulnerable to "hostile" plan modifications by creditors or the trustee that could increase the amounts they owe, currently set at $0, to unsecured creditors. *See Escarcega*, 573 B.R. at 239. In addition, this extended time may lead to greater fees being paid to the trustee. *See* 28 U.S.C. § 586(e).

While Debtors concede that the exact effect of the bankruptcy court's order is unknown at this time, they face a "risk of real harm" and increased economic burdens due to the bankruptcy court's order. *See Spokeo*, 136 S. Ct. at 1549. Debtors have alleged that the bankruptcy court's order, beyond affecting their procedural rights under the Code, impaired their ability to immediately exit their bankruptcies, exposed them to greater costs and payments, and increased their burdens.

This harm is illustrated by the results in the (now moot) case of Mr. Mercado, who would have been eligible for a discharge as soon as he completed all outstanding payments under his original plan. Under his amended plan, Mr. Mercado was required to pay nearly $1,000 to unsecured creditors during the remaining term of his bankruptcy. *See* Chapter 13 Standing Trustee's Final Report and Account (Mercado), ECF No. 81 Case No. 5:16-BK-50651. The injuries stemming from the bankruptcy court's order are, thus, sufficiently "concrete" for Article III standing.[3]

---

[3] For similar reasons, we hold that this dispute is constitutionally ripe for adjudication. *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.") (simplified). Debtors face immediate injury to their procedural rights. And while their pecuniary injuries remain contingent, they sufficiently allege real risk of economic harm from the court's

The injuries are also "particularized" since each Debtor suffered an impairment to their own ongoing bankruptcy case. *Lujan*, 504 U.S. at 560 n.1.  Accordingly, we conclude that Debtors suffered an "injury in fact" sufficient to confer standing.[4]

## B.

In the bankruptcy context, Article III is not the end of the standing inquiry.  Since bankruptcy proceedings affect the "rights of many," implicating the interests of persons not formally parties to the litigation, our court has adopted an additional prudential test to determine an appellant's standing to *appeal* a bankruptcy order.  *See In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999).  This limitation stems from an interest to promote "efficient judicial administration." *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983).

Under this test, the appellant must be a "person aggrieved" by the bankruptcy order to pursue an appeal. *P.R.T.C., Inc.*, 177 F.3d at 777.  The appellant is "aggrieved" if the bankruptcy court order "diminish[es] the [appellant's] property, increase[s] his burdens, or detrimentally affect[s] his rights." *Fondiller*, 707 F.2d at 442.  Nevertheless, "[w]e

---

denial of their initial plans.  *See Coleman*, 560 F.3d at 1005 (holding that bankruptcy dispute was ripe, where one factual contingency remained).

[4] Debtors easily satisfy the constitutional standing requirements of causation and redressability.  The bankruptcy court's actions directly caused Debtors' injury, as they would have otherwise been able to implement their preferred plans and avoid the financial risk they allege.  And Debtors' injury is redressable by this Court—reversal of the bankruptcy court's reasoning would enable Debtors to confirm and complete their plans according to their original terms.

generally do not invoke [this test] in instances in which the appellant was the party that brought the motion at issue on appeal." *In re Palmdale Hills Prop.*, *LLC*, 654 F.3d 868, 874 (9th Cir. 2011) (simplified).  We adopted this exception because the purpose of the doctrine—limiting the appeals of remote non-parties—is not implicated when the appellant is the party below and remains integrally connected to the issues on appeal. *See In re Sherman*, 491 F.3d 948, 957 n.8 (9th Cir. 2007).

No reason warrants applying the "persons aggrieved" test to Debtors.  In contrast to non-parties with only a remote connection to the bankruptcy proceedings, Debtors are the only parties below and remain the only parties in this appeal. Debtors also brought the filings—their own Chapter 13 plans—at issue in this appeal.  We, therefore, hold that Debtors need not establish prudential standing here.[5]

## C.

Nor does the lack of an appellee here deprive us of jurisdiction.[6]   The bankruptcy court has jurisdiction to

---

[5] Even if we applied the test, Debtors satisfy it.  As described above, the court-mandated plan both "detrimentally affected" their rights and "increase[d their] burdens" by requiring them to include a fixed duration in their plans.  *Fondiller*, 707 F.2d at 443.

[6] We need not address whether the lack of an appellee presents a prudential or constitutional impediment to jurisdiction.  *Compare Mills v. United States*, 742 F.3d 400, 406 (9th Cir. 2014) (simplified) ("[R]ules of prudential standing are flexible rules applied to ensure the concrete adverseness which sharpens the presentation of issues.") *with I.N.S. v. Chadha*, 462 U.S. 919, 939 (1983) ("[P]rior to Congress' intervention, there was adequate Art. III adverseness even though the only parties were the INS and Chadha.").  In either case, we are satisfied that the lack of an appellee presents no obstacle to our jurisdiction here.

confirm Debtors' plans, contested or not, in the first instance. *See* 28 U.S.C. § 157(b)(1). Bankruptcy courts, thus, regularly exercise jurisdiction over non-adversarial matters.[7] Congress has likewise granted courts of appeals jurisdiction to review orders of the bankruptcy courts regardless of whether an appellee appears. *See* 28 U.S.C. § 158(d)(1), (2)(A) (expressly contemplating a lack of appellees). This makes considerable sense given that bankruptcy courts, although they are not Article III courts, are units of Article III courts. *See* 28 U.S.C. § 151; *Stern v. Marshall*, 564 U.S. 462, 473 (2011) ("[T]he district courts of the United States have 'original and exclusive jurisdiction of all cases under title 11' . . . . District courts may refer any or all such proceedings to the bankruptcy judges of their district.") (quoting 28 U.S.C. § 1334(a)).

Thus, in the bankruptcy context, courts have retained jurisdiction from unopposed proceedings challenging a decision of the bankruptcy court. In *Toibb v. Radloff*, 501 U.S. 157, 159–160 (1991), for example, the Court

---

**[7]** *See* James E. Pfander, Daniel D. Birk, *Article III Judicial Power, the Adverse-Party Requirement, and Non-Contentious Jurisdiction*, 124 Yale L.J. 1346, 1394 (2015) (referring to "the many uncontested matters that find their way onto the dockets of the bankruptcy courts"); *see also* Michael T. Morley, *Consent of the Governed or Consent of the Government? The Problems with Consent Decrees in Government-Defendant Cases*, 16 U. Pa. J. Const. L. 637, 671 (2014) ("The fact that the debtor and creditors cannot voluntarily resolve their conflicts among themselves establishes that they are adverse . . . . [T]his underlying adverseness is not eliminated by the fact that a creditor might not find it economically worthwhile to contest a bankruptcy proceeding or have any colorable claims or defenses to raise."); Martin H. Redish & Andrianna D. Kastanek, *Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process*, 73 U. Chi. L. Rev. 545, 587, n.157 (2006) ("It suffices to note that the bankruptcy scheme is a narrow exception to the adverseness requirement.").

considered the appeal of a debtor whose bankruptcy petition was sua sponte dismissed by the bankruptcy court. Because the trustee in that case was no longer part of the bankruptcy proceedings, no opposing party appeared in the Court of Appeals or Supreme Court. *Id.* at 160 n.4. The Court found no jurisdictional issue with the lack of an adversary, but appointed an amicus to support the bankruptcy court's position. *Id.*

Our court has regularly considered bankruptcy appeals with only one party appearing. *See, e.g.*, *In re Eliapo*, 468 F.3d 592, 596 n.1 (9th Cir. 2006) (no appellee briefs filed); *In re Nakhuda*, 797 F. App'x 328 (9th Cir. 2020) (unpublished) (no respondent); *In re Inglewood Woman's Club, Inc.*, 708 F. App'x 392, 393 (9th Cir. 2017) (unpublished) (no appellee briefs filed). Other circuit courts have done the same. *See, e.g.*, *Matter of Kindhart*, 160 F.3d 1176, 1177 (7th Cir. 1998) (no appellee to support lower court order); *In re Ramirez*, 204 F.3d 595, 595 (5th Cir. 2000) (no opposing brief filed).

We see no reason why the lack of an objection by the creditors here insulates the bankruptcy court from appellate review or abrogates Debtors' rights to challenge plan provisions which may detrimentally affect their interests. If deprived of appellate jurisdiction here, Debtors would be powerless to vindicate their statutory or constitutional rights from infringement in the lower courts merely because creditors acquiesced to it.[8]

---

[8] We recognize that Debtors could have requested modifications shortening the duration of their plans and appealed a denial of that request for modification. *See, e.g.*, *In re Sunahara*, 326 B.R. 768 (9th Cir. BAP 2005) (appealing the denial of request for plan modification).

For the foregoing reasons, we have jurisdiction over Debtors' appeal and we now turn to the merits of this case.

## III.

We have never had occasion to decide whether a bankruptcy plan must include a fixed—rather than estimated—duration when no party objects to the plan's confirmation. Since no express provision of Chapter 13, even when viewed in the context of its broader structure, prohibits plans with estimated lengths, we reverse.

## A.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). "We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). We read legislative texts "in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco*

---

If the modification was objected to by the trustee or a creditor, we would have at least had an appellee appear. That scenario, however, would not be the same as the one before us; namely, the question there would be whether Debtors must be granted a plan modification under § 1329 allowing them to finish early. *Id.* at 781 (discussing the factors courts should consider when evaluating a debtor's proposed modification). That inquiry is quite different than the issue here: whether the Code allows Debtors to propose estimated terms in the first place. Accordingly, although we would have preferred to receive briefing from the other side, we may still decide this case.

*Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

The Bankruptcy Code is no different. We are not at liberty to "alter the balance struck by the statute" when interpreting the Code. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) (quoting *Law v. Siegel*, 571 U.S. 415, 427 (2014)). "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Thus, we apply the traditional tools of statutory interpretation in construing the Code.

The Code expressly allows debtors to "include any other appropriate provision not inconsistent with [Chapter 13]" in their plans, § 1322(b)(11). So, barring a clear prohibition in the Code, debtors have "considerable discretion to tailor the terms of a plan to their individual circumstances." *In re Monroy*, 650 F.3d 1300, 1301 (B.A.P. 9th Cir. 2011).

Only two provisions of Chapter 13 expressly discuss the duration of a bankruptcy plan. First, § 1322 imposes a maximum duration for all plans. For above-median-income debtors, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). Below-median debtors' plans generally "may not provide for payments over a period that is longer than 3 years[.]" 11 U.S.C. § 1322(d)(2).

Second, § 1325(b)(4) mandates a fixed minimum duration for confirmation—but only if the plan triggered an objection by the trustee or a creditor. 11 U.S.C. § 1325(b)(1), (b)(4)(A). Under this provision, with few exceptions, a debtor's plan must adhere to a minimum duration of three or five years, depending on the debtor's

"applicable commitment period." *Id.*; *see In re Flores*, 735 F.3d 855, 856 (9th Cir. 2013) (en banc) (holding that a Chapter 13 plan under § 1325(b)(1)(B) can be confirmed only if "the length of the proposed plan is at least equal to the applicable commitment period under § 1325(b)(4)"). Like § 1322(d), the "applicable commitment period" is tied to the debtor's income. 11 U.S.C. § 1325(b)(4)(A). Once again, this fixed minimum term applies *only* if "the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan." 11 U.S.C. § 1325(b)(1). The rest of § 1325, which governs the confirmation of all plans, does not include any fixed duration requirement. *See* 11 U.S.C. § 1325(a).

Neither § 1322 nor § 1325 point to an express fixed or minimum duration requirement for Chapter 13 plans absent an objection. Conversely, neither provision prohibits estimated term plans. Indeed, § 1325(b)(1)(B)'s explicit imposition of a minimum duration only when an objection is raised strongly suggests that the absence of such fixed terms in other sections of Chapter 13 was intentional. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (simplified).

Read together, the Code provides for a maximum duration for all plans and a minimum duration for objected-to plans. The clear implication of this framework is that, for plans with no objection, the Code provides no minimum or fixed durations. Coupled with the additional grant allowing debtors to "include any other appropriate provision not

inconsistent with [Chapter 13]" in their plans, § 1322(b)(11), we believe the Code permits a debtor to add an estimated term provision, so long as the plan does not draw an objection.

The Code's structure also supports a debtor's ability to include estimated terms.  Section 1328 mandates that "as soon as practicable after completion by the debtor of all payments under the plan, . . .  the court shall grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a).  Notably, § 1328(a) does not expressly condition the discharge on any time period elapsing, but solely on "completion" of "all payments under the plan."  11 U.S.C. § 1328(a).[9]  If Congress intended to set a fixed duration for all Chapter 13 plans, it could have easily done so by predicating discharge not on completion of "payments," but on the expiration of the plan's duration.

And estimated plan lengths would not interfere with fundamental aspects of the court's bankruptcy administration.  The bankruptcy court and trustee can determine whether a plan is "complete" by looking to whether the debtor has satisfied all required payments under the plan.  11 U.S.C. § 1328(a).  Similarly, estimated plan lengths would not affect the bankruptcy court's evaluation of the debtor's ability to pay under § 1325(a)(6), as this inquiry necessarily involves an estimation of the debtor's future ability to pay.

---

[9] In *Fridley*, 380 B.R. at 540, the BAP found that "completion" under § 1328(a) encompasses an "implied temporal requirement" when the plan includes a designated fixed duration.  But *Fridley* interpreted § 1328(a)'s application to a plan under § 1325(b)(1)(B), which expressly committed debtors to a fixed term of 36 months.  *Id*. at 545.  We do not read this analysis as applying to *all* Chapter 13 plans.

Instead of construing the Code's silence on estimated terms as a permissive grant to debtors, the BAP read a prohibition where none exists. The BAP's decision relies principally on its interpretation of § 1329. Section 1329 permits a debtor, trustee, or unsecured creditor to modify a bankruptcy plan "[a]t any time" before "the completion of payments under such plan." 11 U.S.C. § 1329(a). The provision allows them to request changes to various aspects of the plan, including the amount, timing, and distribution of payments by the debtor. 11 U.S.C. § 1329(a). Specifically, § 1329 permits a request to "extend or reduce the time for [plan] payments." 11 U.S.C. § 1329(a)(2).

The BAP concluded that it would not make sense to allow a debtor to have unfettered discretion to complete payments "early" and shorten the time for payments without complying with § 1329's requirements for plan modification. *Escarcega*, 573 B.R. at 237–38. Allowing a debtor to do this, the court reasoned, would render a trustee's or creditor's § 1329 modification rights a "nullity." *Id.* at 238–239.

We disagree. First, § 1329 governs modifications of an existing, confirmed plan. 11 U.S.C. § 1329(a). While it permits changes to a plan's "time" for payments, it says nothing about requiring fixed durations *ab initio*. A post-confirmation ability to modify a plan's duration does not logically command a set plan length pre-confirmation. We see nothing wrong with a plan starting with an expected length at confirmation and then being converted to a fixed length as the plan unfolds.

Second, estimated term provisions do not allow debtors to unilaterally reduce the "time" for plan payments. 11 U.S.C. § 1329(a)(2). Instead, the estimated term permits a debtor to discharge remaining debts once the payments

required to satisfy priority, secured, and unsecured creditors called for "under the plan" are "complet[ed]" (regardless of any estimated time set in the plan). 11 U.S.C. § 1328(a). This is not the same as reducing the "time" of the plan. Discharge of a plan and modification of a plan are governed by different provisions with different purposes. In this way, a debtor who seeks a discharge earlier than previously estimated after paying off all listed creditors' claims is not requesting a modification at all.

Third, the modification rights of creditors and trustees are not nullified by allowing a plan to be confirmed with an estimated term. After plan confirmation, both still retain the right to modify the amount, timing, and distribution of payments of a debtor's plan before completion of the plan. 11 U.S.C. § 1329(a). To the extent a creditor's or trustee's § 1329 modification rights are limited, it is not because of estimated term provisions, but because § 1328 permits them to be. It is the discharge, not the estimated term, that terminates their modification rights and ultimately prevents creditors from recovering more from Debtors.

Moreover, if creditors are concerned about a plan containing an estimated duration, they can object prior to confirmation or seek conversion to a fixed duration under § 1329(a). As we have long held, an unsecured creditor "ignores [notice of bankruptcy] proceedings . . . at its peril." *Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983).

In fact, § 1329 shows that Congress knew precisely how to enact temporal requirements. Like § 1322(d) and § 1325(b)(1)(B), § 1329 uses clear temporal language: "[a] plan modified under this section may not provide for payments *over a period* that expires after the applicable commitment period[.]" 11 U.S.C. § 1329(c) (emphasis added). It also allows for the modification of the "*time*" for

plan payments.    11 U.S.C. § 1329(a)(2).    Congress's unmistakable use of temporal language highlights its absence elsewhere.

Because the text and structure of the Code do not mandate a fixed term requirement for all Chapter 13 plans, we should not add one without clear direction from the statute.  Accordingly, we hold that the Code does not prevent Debtors from proposing and confirming plans with an estimated duration.

## B.

The BAP relied on several distinguishable cases to support its ruling that Chapter 13 plans confirmed without objection must have a fixed term.  In *Fridley*, the debtors *expressly* committed to make plan payments for a specific period of 36 months.  *Fridley*, 380 B.R. at 544.  The BAP explained that "since they *committed themselves* to thirty-six months, their prepayment does not 'complete' their plan for purposes of §§ 1328(a) or 1329."  *Id*. at 545 (emphasis added).    Thus, the *Fridley* court only read a temporal requirement into "completion of payments" because the plan itself required it to do so.  So, as relevant here, *Fridley* merely tells us that a debtor who commits to a fixed duration is committed to the fixed duration.

The BAP's interpretation of *Flores*, our en banc case, suffers from a similar flaw.  In *Flores*, 735 F.3d at 862, we held that a bankruptcy court may confirm a plan under § 1325(b)(1)(B) "only if the plan's duration is at least as long as the applicable commitment period provided by § 1325(b)(4)."  *Id*. at 862.  In other words, we read a "temporal requirement" of three or five years into § 1325(b)(1)(B)'s applicable commitment period.  *Id*. at 858. In doing so, the *Flores* court reasoned that "[a] minimum

duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly." *Id.* at 860. Without a "minimum plan duration" in § 1325(b)(1)(B), then creditors' ability to seek modification would be undermined.

Nevertheless, *Flores* is squarely an interpretation of § 1325(b)(1)(B). As stated above, § 1325(b)(1)(B) is *only* triggered if a trustee or creditor objects to the original plan. 11 U.S.C. § 1325(b)(1)(B). As *Flores* itself noted, § 1325(b)(1)(B) applied only in the case of an objection, a "distinction" "that suggests that Congress intended" it "to serve [a] different function[]" from other parts of the Code that applied to all plans. 735 F.3d at 858 n.5 (distinguishing § 1325(b) from § 1322(d)). Nothing in *Flores'* text or rationale compels the conclusion that a fixed duration must be included in *all* plans. If Congress intended this end, it could have easily said so by removing the objection trigger of § 1325(b)(1)(B).

Finally, we disagree with the BAP's reading of *In re Anderson*, 21 F.3d 355 (9th Cir. 1994). There, the trustee sought a plan provision to require the debtors to pay their "actual" rather than "projected" disposable income and to allow him to automatically adjust their periodic plan payments without a court order. *Anderson*, 21 F.3d at 358. Nevertheless, § 1325(b)(1)(B) expressly requires only the payment of "projected disposable income." *Id.* We thus rejected the provision because the trustee was not permitted "to impose a different, more burdensome requirement" on debtors. *Id.* Additionally, we found that allowing the trustee to automatically adjust debtors' payments conflicted with

the procedures established for modifying a debtor's plan under § 1329. *Id.*

The BAP construed *Anderson* to prohibit a plan provision that amounts to a plan modification without notice to the trustee or creditors or complying with § 1329's modification procedures. But *Anderson* counsels us to adhere to the requirements of the Code and not to substitute them with "different, more burdensome" terms. *Id.* Thus, if anything, *Anderson* supports Debtors here: the bankruptcy court cannot impose the "more burdensome" fixed duration terms when not required by the Code.

To be sure, we were also concerned that the contested plan provision in *Anderson* would extinguish debtors' § 1329 modification rights. There, the trustee tried to evade the Code's modification procedures by inserting a term allowing the trustee to modify debtors' payment amounts without seeking the court's approval. Here, by contrast, Debtors are not seeking a provision tantamount to a modification under § 1329. Instead, they seek a discharge "as soon as" they complete the payments required in order to satisfy the claims of their creditors under § 1328(a).

## C.

The BAP also rested its imposition of fixed terms on policy grounds. The BAP concluded that mandating a specified plan duration in all Chapter 13 bankruptcies is consistent with Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")—"to ensure that debtors repay creditors the maximum they can afford." *Escarcega*, 573 B.R. at 241 (citing *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011) (quoting H.R. Rep. No. 109–31, pt. 1, at 2 (2005)).

We do not believe that this purpose, extrapolated from a single sentence in the congressional record, justifies judicial reconstruction of the Code. Even if Congress intended a "pro-unsecured creditor" policy in crafting the BAPCPA, we cannot upset the balance it struck in enacting the Code.[10] Indeed, nothing in this decision contravenes a creditor's right to object to an estimated term plan prior to confirmation or to seek modification of the plan before the debtor completes payments. Even if creditors might be better served by requiring fixed minimum terms, this does not give courts license to judicially amend Chapter 13's requirements. "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989).

Moreover, there is no reason to read this particular requirement derived from Congressional purpose into the statute. Courts have identified several congressional purposes underlying Chapter 13, including "enabl[ing] the debtor to make a fresh start," *In re Alexander*, 670 F.2d 885, 889 (9th Cir. 1982); "affording relief only to an 'honest but unfortunate debtor,'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018); "permit[ting] eligible debtors . . . [to] pay a greater amount on debts than they

---

[10] And we have our doubts that the entirety of BAPCPA was designed with that purpose. That sentence from the congressional record refers not to the whole of BAPCPA, but to a specific provision within it. *See* H.R. Rep. No. 109–31, pt. 1, at 2 (2005) ("The heart of the bill's consumer bankruptcy reforms consists of the implementation of [means testing], which is intended to ensure that debtors repay creditors the maximum they can afford."). Moreover, BAPCPA did not amend the portions of § 1329 upon which the BAP relied to reach its determination. *See* BAPCPA, Pub. L. No. 109–8, §§ 102, 318, 119 Stat 23 (2005). Thus, BAPCPA's purpose, whatever that may be, should not guide our interpretation here.

would have . . . under a Chapter 7 liquidation," *In re Blendheim*, 803 F.3d 477, 496 (9th Cir. 2015); and "secur[ing] a broader discharge for debtors under Chapter 13 than Chapter 7[.]" *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990). Given the wide array of divergent "purposes" embodied in the Code, we hew to the statute's language and structure, neither of which prohibits estimated term provisions.

\* \* \*

Because Congress did not prohibit Debtors from proposing an estimated duration in their Chapter 13 plans, we reverse.[11]

## IV.

We now address the BAP's ruling that the Debtors proposed their initial plans in bad faith. The Code compels a bankruptcy court to confirm a debtor's plan if it "has been proposed in good faith and not by any means forbidden by law[.]" 11 U.S.C. 1325(a)(3). Fundamentally, the good faith inquiry assesses "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982).

---

[11] Neither the BAP nor the bankruptcy court addressed Debtors' claim regarding their changes to the unsecured creditor dividend provision. Since we reverse the BAP's interpretation of the Code with respect to fixed terms, we decline to reach this issue and remand for consideration in the first instance.

The good faith inquiry is not a vehicle to promulgate bankruptcy requirements not already in the Code. Courts "cannot add to what Congress has enacted under the guise of interpreting good faith." *In re Welsh*, 711 F.3d 1120, 1131 (9th Cir. 2013) (simplified). We decline to create additional mandatory provisions under the good faith inquiry because "Congress could enact, 'if it chooses, further conditions for the confirmation of Chapter 13 plans.'" *Id.* (quoting *Goeb*, 675 F.2d at 1389). It should also go without saying that "[d]ebtors are not [acting] in bad faith merely for doing what the Code permits them to do." *Id.* at 1132. Instead, the good faith analysis should be a fact-intensive examination of the "totality of the circumstances." *Welsh*, 711 F.3d at 1129. Where courts fail to factually support their good faith determinations, this Court has remanded for further findings. *In re Tucker*, 989 F.2d 328, 330 (9th Cir. 1993).

Here, the courts below relied on their erroneous interpretation of the Code to determine that the Debtors lacked good faith. The bankruptcy court's good faith analysis was sparse: "the court finds the additional provisions to the plans are not proposed in good faith, as required by § 1325(a)(3)." *Escarcega*, 557 B.R. at 776. Likewise, the BAP found that Debtors' proposed estimated duration "put unsecured creditors at a disadvantage and thus amount[ed] to an unfair manipulation of the Bankruptcy Code," and "blatantly" violated the BAPCPA's purpose "to maximize payments to unsecured creditors." *Escarcega*, 573 B.R. at 242.

None of these reasons justify the lack of good faith finding. Prior to 2016, Debtors' estimated duration provision would have mirrored the provisions in the San Jose Division's model Chapter 13 plan. We find it hard to believe that debtors who dutifully followed the Division's previous

*model* plan were—despite all appearances—"unfairly manipulat[ing]" the Code all along. *Id.* at 225. Furthermore, as we held above, the Code does not prohibit estimated term plans. Debtors do not lack good faith "merely for doing what the Code permits them to do." *Welsh*, 711 F.3d at 1132. While estimated duration plans may not favor unsecured creditors, it is for Congress, not the courts, to determine if such plans are too prejudicial to unsecured creditors. *Id.* at 1131.

We vacate this finding. *See Tucker*, 989 F.2d at 330.

## V.

Debtors finally argue that the bankruptcy court failed to hold a confirmation hearing within the timeframe prescribed by the Code and imposed an unwritten "de facto local rule" which burdened their procedural rights. We disagree.

First, the Code states that "the court shall hold a hearing on confirmation of the plan" "not earlier than 20 days and not later than 45 days after the date of the meeting of creditors." 11 U.S.C. § 1324(a)–(b). Notably, this provision requires only that a hearing be "held," not *concluded*, within 45 days. *See* 11 U.S.C. § 1324(b).

In contrast, under Chapter 12's confirmation provision, courts must "conclude[]" the confirmation process "not later than 45 days after" the plan is filed. 11 U.S.C. § 1224. The presence of clear language requiring a conclusive confirmation hearing in Chapter 12 and the absence of similar language in Chapter 13 strongly indicates that courts need only *hold* a hearing to comply with Chapter 13 of the Code. 11 U.S.C. § 1324(b); *see Barnhart*, 534 U.S. at 452. And even assuming that, as Debtors argue, those initial

hearings were not "conclusive" or "substantive," they met the Code's requirements.

Moreover, even when no party objects, courts have an independent duty to determine whether a debtor's plan complies with the Code. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010). The Code "makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements [of Chapter 13]." *Id.* In fulfilling this duty, the bankruptcy court has discretion to manage its docket and to call for additional hearings to aid its inquiry. *See* 11 U.S.C. § 105. While performing this function may delay the confirmation of Debtors' plans, this is what the law calls for. Here, the bankruptcy court properly exercised its discretion by deferring consideration of Debtors' additional provisions until it could adequately address them.

Accordingly, we affirm the BAP's holding regarding the bankruptcy court's confirmation procedures.[12]

---

[12] We decline to address the trustee's due process concerns regarding the BAP decision. *See Escarcega*, 573 B.R. at 233–35. The trustee did not file a notice of appeal, but rather asked us to reverse and vacate the BAP's adverse findings against her in an amicus brief. "[T]he untimely filing of a notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order." *In re Mouradick*, 13 F.3d 326, 327 (9th Cir. 1994). Accordingly, we lack jurisdiction to consider her arguments. Debtors, however, timely raised similar concerns. Since the BAP's decision is vacated except as to part V.B, we see no reason to reach the merits of these arguments.

\* \* \*

For the foregoing reasons, we reverse and vacate the BAP's decision except as to part V.B, and remand for further consideration in light of this opinion.

**REVERSED** in part, **AFFIRMED** in part, **VACATED** and **REMANDED**.