
**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CHRISTINA GREENFIELD,<br>    Debtor. | BAP No.  ID-21-1150-SFB<br><br>Bk. No.  19-20785-NGH |
| CHRISTINA GREENFIELD,<br>        Appellant,<br>v.<br>KELLY L. GREENFIELD SHELEY;<br>DWIGHT GREENFIELD; ERIC<br>WURMLINGER; ROSALYND<br>WURMLINGER; DAVID P GARDNER,<br>Chapter 7 Trustee,<br>        Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Idaho
Noah G. Hillen, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

### INTRODUCTION

Debtor Christina Greenfield and creditors Eric and Rosalynd

Wurmlinger are former neighbors who have been fighting with each other

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

for over a decade. The dispute escalated into a state court lawsuit that resulted in a judgment in favor of the Wurmlingers. That judgment has been amended from time to time as the state court awarded the Wurmlingers their costs and attorney's fees incurred in the trial court and on appeal. The Wurmlingers have recorded each version of their judgment in the county where Greenfield resided, thereby giving them a judgment lien against her residence.

In her bankruptcy case, Greenfield objected to the Wurmlingers' claim, primarily arguing that the Wurmlingers had not timely or properly renewed their judgment. But the bankruptcy court overruled her objection on the merits. It ruled in the alternative that Greenfield lacked standing to object to any claims because the estate was insolvent. Though Greenfield contends that her estate is solvent, the record does not support her contention. To the contrary, the amount of estate expenses and creditors' claims exceeds the amount of funds available for distribution to such an extent that Greenfield has not established that she has been injured by the order appealed. Accordingly, we DISMISS for lack of standing.

## FACTS[1]

In December 2019, Greenfield commenced her chapter 7[2] case. In her initial schedules, she listed her residence as an asset, and disclosed a

---

[1] We exercise our discretion to take judicial notice of documents electronically filed in Greenfield's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[2] Unless specified otherwise, all chapter and section references are to the

mortgage. Greenfield claimed a homestead exemption in the amount of $100,000 in her residence.

The Wurmlingers timely filed a proof of claim for $261,083.21, including interest. They identified $170,000.00 of that amount as secured and the remaining $91,083.21 as unsecured based on a valuation of Greenfield's residence at $400,000.00 They also attached to their claim an itemization, describing the judgments entered in their favor against Greenfield beginning with a $103,000.00 judgment dated March 26, 2013, which accrued interest at 5.250% per annum. ("Original Judgment"). The Wurmlingers calculated the accrued interest through the petition date, on the principal amount of the judgment, to be $36,326.55. The state court entered a first amended judgment ("First Amended Judgment") dated July 8, 2013, adding $65,755.37 in costs and attorney's fees to the Original Judgment. According to the proof of claim itemization, the Wurmlingers calculated that the trial costs and fees accrued $22,207.30 in prepetition interest at the statutory rate of 5.250% from the date of the First Amended Judgment to the bankruptcy filing. After Greenfield lost her appeal from the Original Judgment, the state court entered a separate judgment for appellate fees and costs dated July 22, 2015, adding $27,582.00 in costs and attorney's fees. The Wurmlingers stated that the appellate fees and costs accrued $6,212.00 in prepetition interest at the statutory rate of 5.125% from the date of this judgment to the date of the bankruptcy filing ("Appellate

Bankruptcy Code, 11 U.S.C. §§ 101–1532.

Fees and Costs Judgment"). Finally, on September 20, 2015, the state court entered its Second Amended Judgment to incorporate the monetary awards from the Original Judgment, the First Amended Judgment, and the Appellate Fees and Costs Judgment ("Second Amended Judgment").

The Wurmlingers recorded each of the judgments in Kootenai County, where Greenfield resided.

In November 2017, the Wurmlingers moved to renew their judgment against Greenfield. Shortly thereafter, the state court entered its "Order Renewing Judgment," which stated that "the Judgment entered in this case on March 26, 2013 [the Original Judgment] is renewed" ("Renewal Order"). The Wurmlingers eventually recorded the Renewal Order with the Kootenai County Recorder on September 4, 2018.

In May 2020, the bankruptcy court entered its order discharging Greenfield from her prepetition debts.

In April 2021, the trustee filed a motion to sell Greenfield's residence. As part of the motion, the trustee also sought to pay the first deed of trust and the Wurmlingers' judgment lien at closing. Greenfield opposed the sale motion on a variety of grounds, most of which she has not pursued on appeal. Her opposition also objected to payment of the Wurmlingers' claim. She argued that the Wurmlingers had not renewed their judgment according to appropriate Idaho procedures and that the judgment therefore should be treated as void. The bankruptcy court granted the motion to sell and set Greenfield's claim objection for hearing.

Three days before the claim objection hearing, Greenfield filed her "supplemental" objection to the Wurmlingers' claim. In addition to her continuing arguments about the procedures the Wurmlingers followed in renewing the Original Judgment, Greenfield maintained that their ten-month delay in recording the Renewal Order rendered the Renewal Order untimely. Hence, she claimed that the Original Judgment (and not merely the judgment lien) became ineffective and unenforceable under I.C. §§ 10-1110 and 10-1111. According to her, both entry of the Renewal Order and its recordation had to occur before the five-year renewal period expired. Finally, Greenfield asserted that the Original Judgment was procured by fraud.

The bankruptcy court rendered an oral decision overruling Greenfield's claim objection.[3] In overruling her objection, the bankruptcy court addressed each of Greenfield's arguments and determined that they lacked merit, constituted an impermissible collateral attack on the state court's orders and judgments, or both. The bankruptcy court ruled in the alternative that Greenfield lacked standing to object to any of the claims

---

[3] Two creditors related to Greenfield, Dwight Greenfield and Kelly L. Greenfield Sheley, also objected to Wurmlingers' claim, largely mirroring Greenfield's claim objection. The bankruptcy court overruled their claim objections at the same time and on the same grounds as it overruled Greenfield's claim objection. Neither of the objecting creditors appealed the order overruling their claim objections. Though listed as appellees in Greenfield's appeal, they have not participated in this appeal. Indeed, each objecting creditor filed a letter in response to the BAP Clerk's Office's Conditional Order of Waiver specifically electing to not file a brief.

asserted against the estate. As the bankruptcy court explained, the estate was hopelessly insolvent.

Greenfield timely appealed from the bankruptcy court's written order overruling her claim objection.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). Subject to the standing analysis in the Discussion section, below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did Greenfield establish her standing?

## STANDARD OF REVIEW

We review jurisdictional issues de novo. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Standing is a threshold jurisdictional issue arising from Article III of the Constitution *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Pursuant to Article III's case and controversy requirement, a party must establish its standing by demonstrating: "(1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* In the context of an appeal

6

from a bankruptcy court order, appellants must demonstrate injury in fact by showing that the order on appeal caused them injury that is "concrete and particularized" and "actual or imminent." *Id.* at 1141-43. This means that the order appealed must have detrimentally impaired their rights or increased their economic burdens. *Id.*

In the context of whether a chapter 7 debtor has standing to object to claims, the debtor must show that the estate is not hopelessly insolvent.[4] *See Wellman v. Ziino (In re Wellman)*, BAP No. NC-07-1154-CaKD, 2007 WL 4105275, at *1 n.5 (9th Cir. BAP Nov. 9, 2007); *see also Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). If it is, the debtor will not be affected by the outcome of the claims litigation and thus lacks standing. *See An-Tze Cheng v. K&S Diversified Invs., Inc. (In re Cheng)*, 308 B.R. 448, 454 (9th Cir. BAP 2004), *aff'd*, 160 F. App'x 644 (9th Cir. 2005) ("A debtor, in its individual capacity, lacks standing to object unless it demonstrates that it would be 'injured in fact' by the allowance of the claim.").

In this instance, Greenfield has not demonstrated that there is a sufficient likelihood of a surplus estate. Absent a surplus estate, the order

---

[4] When the debtor has been denied a discharge, or an exception to discharge has been granted, the amount distributed to creditors in satisfaction of their debts can have a direct impact on the debtor's post-bankruptcy liabilities. In such a case, debtors typically have standing with respect to all matters that might affect the size of the estate and the claims against the estate. *See Koshkalda v. Schoenmann (In re Koshkalda)*, 622 B.R. 749, 764 n.7 (9th Cir. BAP 2020). That is not the situation in this case as Greenfield has received her discharge.

overruling Greenfield's claim objection did not cause her to suffer an injury in fact. Without some proof of such injury, Greenfield lacks standing.

Greenfield insists that the bankruptcy estate is solvent. But the record does not support her position. According to the Report of Sale filed by the trustee, the estate has received $600,000, paid $400,111.95 to secured creditors including the Wurmlingers, and paid $41,505.58 for the real estate commission and closing costs. The estate also paid Greenfield her homestead exemption in the amount of $100,000.00. The parties have not suggested that other assets exist. As a result, after the sale closed, the estate held $58,382.47 in funds to distribute.[5]

On appeal, Greenfield still challenges the Wurmlingers' $261,083.21 secured claim. But she now concedes that in light of their renewal of the Original Judgment, the Wurmlingers have a $103,000.00 unsecured claim. Nor has Greenfield disputed the $36,326.55 in prepetition interest that accrued on the $103,000.00.[6] This is critical because even if their claim is limited to an unsecured claim in the amount of $139,326.55, the estate

---

[5] A preliminary, unserved version of the Trustee's Final Report filed in the bankruptcy court on November 30, 2021, reflects an additional disbursement for bank service fees of $201.64, which would reduce the amount available for distribution to $58,180.83. The preliminary Final Report further includes the Trustee's commission of $28,250.00 and expenses of $721.30 to be paid as administrative expenses. These amounts would further reduce the remainder available for unsecured creditors from $58,180.83 to $29,209.53. But even without these additional estate liabilities, the estate still is insolvent, as set forth in the remainder of this decision.

[6] Greenfield conceded during oral argument that the Wurmlingers are entitled to post-judgment interest on the Original Judgment, from the date of its entry in 2013.

remains insolvent. Greenfield's best-case result on appeal would return to the estate the $261,083.21 already paid to the Wurmlingers as secured creditors. This would increase the amount held by the estate from the $58,382.47 held after closing to $319,465.68. But it also would increase the unsecured debt by $139,326.55 to $389,590.75, still leaving the estate insolvent:

| Description of Amount | Wurmlingers Included as Secured Creditors | Wurmlingers Included as Unsecured Creditors |
|---|---|---|
| Sale Price | $600,000.00 | $600,000.00 |
| Exemption | (100,000.00) | (100,000.00) |
| **Net to Estate** | **$500,000.00** | **$500,000.00** |
| | | |
| Secured Creditors Paid at Closing | | |
| Specialized Loan Servicing | (139,028.74) | (139,028.74) |
| **Eric and Rosalynd Wurmlinger** | **(170,000.00)** | |
| **Eric and Rosalynd Wurmlinger** | **(91,083.21)** | |
| Subtotal Secured Creditors | (400,111.95) | (139,028.74) |
| | | |
| Administrative Expenses Related to Sale | | |
| and Paid at Closing | (41,505.58) | (41,505.58) |
| *Balance After Closing* | **$58,382.47** | **$319,465.68** |
| | | |
| Unsecured Creditors[7] | | |
| Global Payments | (320.00) | (320.00) |
| Calvary SPV I, LLC | (12,190.94) | (12,190.94) |
| Verizon by American InfoSource | (89.77) | (89.77) |
| Pinnacle Credit Services, LLC | (217.00) | (217.00) |
| Chapman Financial Services | (7,446.49) | (7,446.49) |
| Kelly Greenfield Sheley | (80,000.00) | (80,000.00) |
| Dwight Greenfield | (150,000.00) | (150,000.00) |
| **Eric and Rosalynd Wurmlinger** | | **(139,326.55)** |
| Subtotal Unsecured Creditors | (250,264.20) | (389,590.75) |
| **Estate's Deficit** | **(191,881.73)** | **(70,125.07)** |

---

[7] As for her unsecured creditors other than her relatives and the Wurmlingers, Greenfield indicated in her sale objection that she disputed the claims of these other creditors. But she never objected to these claims. In aggregate, they total $20,264.20, so once again even if those claims were disallowed, the estate still would be insolvent by roughly $50,000.00 ($70,125.07-$20,264.20=$49,860.87).

In short, Greenfield has not demonstrated that the bankruptcy estate is solvent or that there is any likelihood that she will receive a distribution from the estate under any scenario—even if she prevails on appeal. As a result, she has failed to show that the order on appeal caused her any injury in fact. Consequently, this appeal must be DISMISSED for lack of standing.[8]

---

[8] While we must dismiss this case for lack of standing, we note that there is nothing in the record to suggest that the bankruptcy court erred in addressing the merits of Greenfield's claim objection. First, the bankruptcy court correctly noted that it could not examine the propriety of the underlying judgment without contravening the Full Faith and Credit Act, 28 U.S.C. § 1738, and the *Rooker-Feldman* doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Second, Greenfield's argument that the Wurmlingers' delay in recording the Renewal Order limits them to an unsecured claim is contrary to *Alpha Mortgage Fund II v. Drinkard*, 497 P.3d 200, 206 (Idaho 2021), and *Smith v. Smith*, 423 P.3d 998, 1004 (Idaho 2018). Third, the Motion to Renew Judgment used by the Wurmlingers appears to be a form adopted by Idaho and requires only that the original judgment amount be stated. Similarly, the form order used to renew the judgment, which is the document recorded, only references the date the judgment originally was entered. Idaho law is unclear as to whether every amendment of a judgment must be recorded in addition to the original judgment. However, even if the Wurmlingers were required to renew every amendment of their judgment, the Second Amended Judgment was entered after Idaho had expanded the period for renewal of judgments from five to ten years, *see Smith*, 423 P.3d at 1000 n.1, and the expanded period has not yet expired.