Easterbrook, Circuit Judge.
An application for relief under Chapter 13 of the Bankruptcy Code transfers most of a debtor's assets to the newly formed bankruptcy estate. 11 U.S.C. §§ 541, 1306. Property stays in the estate until the bankruptcy court confirms a plan of payment. Then, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). This means that the debtor becomes personally responsible for the expenses of maintaining that property.
Although the statute presumptively returns the estate's property to the debtor, the Bankruptcy Court for the Northern District of Illinois has adopted a form order reversing this presumption and maintaining the property in the estate for the duration of the plan, which can be for as long as five years. Some debtors treat this as permission to violate traffic laws. The City of Chicago makes a car's owner, rather than its driver, liable for many fines, including those for speeding, running a red light, and illegal parking. See, e.g., Chicago Municipal Code § 9-101-020(a). Chicago tells us that, after their payment plans were confirmed, the seven debtors in these consolidated appeals incurred, and failed to pay, at least 72 fines aggregating almost $12,000. The debtors assert that the estates can ignore their tickets because a Chapter 13 plan does not provide for the payment of post-petition fines and that the automatic stay of 11 U.S.C. § 362 prevents the cars from being towed or booted. The upshot appears to be that these fines will never be paid.
*557 Chicago asked the court to vacate the orders keeping the vehicles in the estate. After stating on the record that she had not read the City's motions, Chief Bankruptcy Judge Hollis summarily denied them. She did not mention § 1327(b), and the only reason she gave is that the court as an institution routinely keeps all assets in all Chapter 13 estates. She did not say why she and her colleagues do this-and, as far as the parties are aware, or we could ascertain, the court has never explained why it made this decision.
As a fallback, the City asked the bankruptcy court to treat the fines as administrative expenses, necessary for the preservation of each estate's property. See 11 U.S.C. § 503(b)(1) ; Reading Co. v. Brown , 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). Chief Bankruptcy Judge Hollis denied that motion too, this time with an opinion, In re Haynes , 569 B.R. 733 (Bankr. N.D. Ill. 2017), and a district judge affirmed. City of Chicago v. Marshall , 281 F.Supp.3d 702 (N.D. Ill. 2017).
Immunity from traffic laws for the duration of a Chapter 13 plan does not seem to us an outcome plausibly attributed to the Bankruptcy Code. Nothing in the text of the Code so much as hints at such an objective, and one point of returning property to the debtors' ownership under § 1327(b) is to ensure that debtors pay the ordinary and necessary expenses of maintaining that property.
Section 1327(b) gives bankruptcy judges discretion to hold assets in the estate in particular cases, but the exercise of this discretion-like the exercise of all judicial discretion-requires a good reason. "[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." United States v. Burr , 25 F. Cas. 30, 35 (No. 14692d) (C.C. Va. 1807) (Marshall, C.J.). See also, e.g., United States v. Corner , 598 F.3d 411, 415 (7th Cir. 2010) (en banc). The bankruptcy court has not given a reason-not for flipping the statutory presumption as a norm, not for denying the City's motions in these debtors' cases.
It is hard to see how the court could justify routinely doing the opposite of what the statute provides. Cf. Law v. Siegel , 571 U.S. 415, 424-25, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (a bankruptcy court's equitable power cannot be used to contradict rules in the Bankruptcy Code). Section 1327(b) tells us what the norm must be. And the absence of a reason for departing from the statutory norm in any particular case makes it impossible for us to sustain the bankruptcy court's decisions.
Lawyers representing these debtors, the bankruptcy trustee, and three amici curiae have attempted to supply reasons, but silence from the bankruptcy court makes that futile. The statute calls for an exercise of discretion by federal judges, not an exercise of imagination by the bar.
And the reasons now proffered by counsel would have been inadequate, had they been articulated by bankruptcy judges. The rationale is that many debtors need cars to earn a living. If they lose their jobs, they will be unable to make the payments called for by the Chapter 13 plans, and the function of that chapter-which allows debtors to keep their assets in exchange for partial payment-would be defeated.
The problem with this rationale is that it does not explain why Chapter 13 permits debtors to use particular assets to earn money without paying the assets' expenses. Operating a car is costly. The owner or lessee must pay for insurance, gasoline, repairs, maintenance, and parking, among other things. Private providers of *558 parking must be paid. The effect of the bankruptcy court's orders, however, is that public providers of parking (that is to say, city streets) need not be paid. Other involuntary creditors, such as victims of accidents caused by speeding or running red lights, likewise could be stiffed in the name of permitting debtors to keep their cars and jobs. Yet the debtors have not offered a reason for thinking that debtors must pay for insurance and parking in private lots, but not for reckless driving or parking on public streets. We asked at oral argument if the bankruptcy court's global order has any effect, any at all, other than sheltering scofflaws. No one was able to suggest such an effect.
When a car is important to earning the income needed to carry out a Chapter 13 plan, the bankruptcy court can forbid the vehicle's repossession by the lienholder, whose self-help remedy is displaced by payments under a confirmed plan. Going beyond that and permitting debtors to park for free wherever they like, or to drive without a risk of fines for moving violations, has nothing to recommend it. The Bankruptcy Code cannot reasonably be read to enlist the judiciary's aid in permitting debtors to violate the law. Nor should it be necessary, before a public body can collect a $50 parking ticket, for it to pay the cost of counsel to file a motion to lift the automatic stay, 11 U.S.C. § 362(d), or dismiss the whole case for abusive conduct, see 11 U.S.C. § 1307(c), one debtor at a time.
A case-specific order, supported by good case-specific reasons, would be consistent with § 1327(b), but none was entered in any of these cases. Chicago therefore is entitled to the principal relief it seeks: an order restoring the estates' assets to the debtors' personal ownership. Chicago tells us that, if it receives that relief, we need not decide whether parking and moving-violation fines should be treated as administrative expenses. On this understanding, we bypass that subject.
REVERSED