# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 26, 2020

Lyle W. Cayce
Clerk

No. 19-50982

In the Matter of: Annette Marie Diaz,

*Debtor*,

Annette Marie Diaz,

*Appellant*,

*versus*

Mary K. Viegelahn,

*Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-798

Before Stewart, Clement, and Costa, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

This appeal is about whether a provision in a local chapter 13 bankruptcy plan is valid. That provision—Section 4.1—requires that debtors in the Western District of Texas turn over to the bankruptcy trustee any tax refund amounts they receive in excess of $2,000. We hold that Section 4.1 is invalid because it abridges debtors' substantive rights and conflicts with the

No. 19-50982

Supreme Court's guidance on 11 U.S.C. § 1325(b)(2) in *Hamilton v. Lanning*, 560 U.S. 505 (2010).

We therefore VACATE the bankruptcy court's confirmation of Debtor's Revised Plan and REMAND to allow Debtor to file a new plan.

## I.

In October 2017, the United States Bankruptcy Court for the Western District of Texas adopted a district-wide "form" chapter 13 plan ("Local Plan") by issuing its Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan, applicable to cases filed on or after November 1, 2017. The Local Plan includes Section 4.1, which states that any annual tax refund amounts that a chapter 13 debtor receives in excess of $2,000 are to be turned over to the bankruptcy trustee:

> All tax refunds received by Debtor . . . while the chapter 13 case is pending shall be allocated as set forth below:
>
> 1) The total amount of the aggregate tax refund(s) received for any tax period that exceeds $2,000.00 shall, upon receipt, be paid and turned over to the Trustee as additional disposable income and such amount shall increase the base amount of the Plan.   The Plan shall be deemed modified accordingly, and the Trustee will file a notice of plan modification within 21 days of receipt of the tax refund.
>
> . . .
>
> 4) Notwithstanding subparagraph (1) above, Debtor may file a notice to retain the portion of the tax refund otherwise payable to the Plan under subparagraph (1) with twenty-one (21) days negative notice as set forth in Local Rule 9014(a) if, at the time of receipt of a refund, Debtor's Plan provides for the payment of 100% of allowed general unsecured claims within the term of this Plan. If the Trustee does not object within the twenty-one

2

(21) day negative notice period, Debtor may retain that portion
of the tax refund.

In December 2017, Annette Marie Diaz ("Debtor"), a single mother
with two minor sons whose income is below median for the State of Texas,
filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code
("Code").[1] On the same day, Debtor filed her Schedules, Statement of
Financial Affairs, and initial Chapter 13 plan. Debtor's initial Schedules did
not indicate that she expected to receive a federal income tax refund.

On February 13, 2018, two days before the confirmation hearing,
Debtor filed an amended plan ("First Amended Plan" or "Plan"). Debtor's
First Amended Plan proposed variable monthly payments for sixty months:
$1,440 for months 1–4 of the Plan and $1,505 for months 5–60 of the Plan.
Debtor also crossed out—or "struck through"—all of Section 4.1. Along
with her First Amended Plan, Debtor filed her amended Schedules. Debtor
amended her Schedule I—which is for monthly income—to pro-rate, or
"amortize," on a monthly basis the full tax refund she expected to receive.
Debtor's 2017 tax return indicated she was to receive a refund of $3,261 in
2017. Accordingly, Debtor's amended Schedule I stated that she would
receive $272 from "other monthly income," or "1/12th [of her] Tax
Refund."[2] Debtor also amended her Schedule J—which is for expenses—to

---

[1] Debtor reported a total income of $29,791 for 2017. The median income for the
years 2014–2018 in the State of Texas was $59,570. U.S. Census Bureau, Quick
Facts: Texas, https://www.census.gov/quickfacts/TX (last visited August 13, 2020).

[2] Trustee's brief emphasizes that Debtor filed two sets of amended Schedules on
February 13, 2018, the first of which included an estimated tax refund amount of $9,500 on
Schedule I. But that Debtor filed two sets of amended Schedules is irrelevant because the
first set of Schedules filed that day was based on her 2016 tax refund of approximately
$9,500. The bankruptcy court was correct to consider only the second set of Debtor's
amended Schedules filed on February 13, which reflected her 2017 tax filing and reduced
her estimated refund to $3,261.

include additional expense amounts that, in essence, offset her tax refund "monthly income." Amended Schedule J's estimated monthly expenses for Debtor included, *inter alia*: $410 for food and housekeeping supplies; $50 for clothing, laundry, and dry cleaning; $40 for personal care products and services; and $36 for entertainment, clubs, recreation, newspapers, magazines, and books.

At the confirmation hearing on February 15, 2018, the bankruptcy trustee, Mary Viegelahn ("Trustee"), objected to Debtor's First Amended Plan on account of Debtor's late filing. The bankruptcy court allowed Trustee the opportunity to file a brief, which was submitted on March 1, 2018. On March 7, 2018, Debtor filed a Second Amended Plan that did not physically strike Section 4.1, but included a nonstandard provision in Section 8, which stated that the provisions of Section 4.1 were null and void and that the instructions to Schedule I require that she amortize her refund. Debtor also filed a response brief and letter supplement in support of confirmation of her Second Amended Plan. However, the bankruptcy court did not grant Debtor leave to file any post-hearing documents. As such, the bankruptcy court did not consider Debtor's Second Amended Plan when it denied confirmation of her First Amended Plan in its Memorandum Opinion issued May 14, 2018.

In its opinion, the bankruptcy court made the following findings of fact: "Debtor is single with two dependents"; "Debtor works as a medical assistant and earns $2,644.16 per month"; and "Debtor's Schedule I (Statement of Income) pro-rates Debtor's refund for 2017 of $3,261.00 in the monthly amount of $272.00." In denying confirmation of Debtor's First Amended Plan, the court held that: Debtor could not strike Section 4.1; Debtor's argument that only a debtor may propose the form and terms of a chapter 13 plan was incorrect; tax refunds are disposable income; and the instructions to Schedule I do not require Debtor to account for annual tax

refunds as monthly income. The bankruptcy court entered its Order Denying Confirmation of Debtor's Chapter 13 Plan on May 15, 2018.

On May 30, 2018, Debtor filed another Chapter 13 plan ("Revised Plan") which did not strike Section 4.1 or contain any nonstandard provision in Section 8. On July 18, 2018, the bankruptcy court confirmed Debtor's Revised Plan. The bankruptcy court's confirmation order stated that: "Debtor's 2017 tax refund due to the Trustee in the amount of $1,261.00 will be paid through the [Revised] Plan at an additional $25.00 month [sic] which is included in the last stair step payment for months 8 - 60 of [$1,635.00]." Debtor then appealed the bankruptcy court's denial of her First Amended Plan to the district court. The district court affirmed the bankruptcy court's decision. Debtor timely appealed to this court.

## II.

"We review the decision of the district court by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Kennard v. MBank Waco, N.A.* (*In re Kennard*), 970 F.2d 1455, 1457 (5th Cir. 1992). The district court reviewed the bankruptcy court's conclusions of law de novo. *See Drive Fin. Servs., LP v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008). The bankruptcy court's findings of fact are reviewed for clear error. *In re Kennard*, 970 F.2d at 1457. Mixed questions of law and fact are reviewed de novo. *Bass v. Denney*, 171 F.3d 1016, 1021 (5th Cir. 1999).

## III.

Filing for chapter 13 bankruptcy relief is an alternative to filing for chapter 7 relief. While chapter 7 requires that debtors liquidate their assets, chapter 13 allows debtors with a regular source of income to discharge certain debts after completing a bankruptcy plan that meets the Code's requirements. *See Lanning*, 560 U.S. at 508. A chapter 13 debtor has the

exclusive right to file a plan. 11 U.S.C. § 1321. And a debtor's proposed plan may "include any other appropriate provision not inconsistent with [the Code]." *Id.* § 1322(b)(11). Chapter 13 plans that meet the Code's requirements must be confirmed by the bankruptcy court. *See id.* §§ 1322, 1325(a)(1). But if the bankruptcy trustee or an unsecured creditor objects to plan confirmation, the bankruptcy court may not confirm a chapter 13 plan unless "the plan provides that *all of the debtor's projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." *Id.* § 1325(b)(1)(B) (emphasis added).

Bankruptcy courts have been delegated authority to adopt local rules governing practice and procedure. FED. R. BANKR. P. 9029(a) (allowing district courts to adopt local bankruptcy rules "governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction"). The Federal Rules of Bankruptcy Procedure permit courts to create a local form for chapter 13 plans, as the Western District of Texas did here. *Id.* 3015.1. However, these rules must be procedural only—they may not "abridge, enlarge, or modify any substantive right." *Bonner v. Adams* (*In re Adams*), 734 F.2d 1094, 1099 (5th Cir. 1984); *see* 28 U.S.C. § 2075. A "National Plan" for chapter 13 debtors also exists in the form of "Official Form 113." A district must adopt the National Plan if it has not adopted a district-wide local form plan. *See* FED. R. BANKR. P. 3015.1 advisory committee's note.

## IV.

Here, because Trustee objected to the confirmation of Debtor's First Amended Plan, Debtor was required to pay all of her "projected disposable income" to the Trustee. *See* 11 U.S.C. § 1325(b)(1)(B). In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act

("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. The BAPCPA did not define "projected disposable income," but did attempt to define how "disposable income" is to be calculated. In *Hamilton v. Lanning*, the Supreme Court explained that, under the BAPCPA:

> "Disposable income" is . . . defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. "Current monthly income," in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6–month lookback period, which generally consists of the six full months preceding the filing of the bankruptcy petition. The phrase "amounts reasonably necessary to be expended" in § 1325(b)(2) is also . . . defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," but for a debtor with income that exceeds the state median, only certain specified expenses are included.

560 U.S. at 510 (cleaned up).

The Court further explained that to calculate a debtor's *projected* disposable income, the starting point of the analysis is to calculate "disposable income" using the BAPCPA's guidance. *Id.* at 519 ("[A] court . . . should begin by calculating disposable income, and in most cases, nothing more is required."). But "in unusual cases," the Court held, "[a court] may . . . take into account . . . known or virtually certain information about the debtor's future income or expenses" in calculating projected disposable income. *Id.*

While the Code does not address how tax refunds should be treated, Section 4.1 of the Local Plan imposes the specific, categorical rule that chapter 13 debtors in the Western District of Texas must turn over to the

Trustee any tax refund amounts they receive in excess of $2,000. The issue here is whether that rule—which automatically designates debtors' "excess" tax refund amounts as "projected disposable income" to which the Trustee is entitled—is valid.

In *Lanning*, the Supreme Court made clear that the Code requires courts to treat above- and below-median income debtors' "disposable income[s]" differently. *See* 560 U.S. at 510. The Court held that, for below-median income debtors, any amounts reasonably necessary to be expended for the maintenance and support of a debtor *are not* to be considered as a part of his or her "disposable income": "For a debtor whose income is below the median for his or her State, ['amounts reasonably necessary to be expended' in § 1325(b)(2)] includes the *full amount* needed for 'maintenance or support,' but for a debtor with income that exceeds the state median, only certain specified expenses are included." *Id.* (emphasis added) (citations omitted). As such, Debtor contends that, as a below-median income debtor, the Code and *Lanning* allow her to retain any tax refund amount she receives in excess of $2,000 if she can demonstrate that such amount is "reasonably necessary" for her family's "maintenance and support." According to Debtor, Section 4.1's "one-size-fits-all" rule—which requires both above-*and* below-median income debtors to turn over to the Trustee any "excess" tax refund amounts—abridges the substantive rights of below-median income debtors and is therefore invalid. Trustee's response, echoing the bankruptcy court, is that Section 4.1 balances the Code's "requirement of individualization . . . with the [bankruptcy court's] need for efficiency," and asserts, with a single citation, that "[m]any judicial districts have adopted a form plan requiring all or some portion of a refund to be turned over." That response is unavailing.

We agree with Debtor that Section 4.1's categorical rule is inapt as applied to below-median income debtors filing for chapter 13 relief in the

Western District of Texas. Section 1325(b)(2) of the Code, as clarified in *Lanning*, plainly allows below-median income debtors to retain any income that is reasonably necessary for their maintenance and support. *See id.* But Section 4.1 requires that *all* chapter 13 debtors turn over to the Trustee *all* tax refunds received in excess of $2,000 as "projected disposable income." While we recognize that the bankruptcy court has an important interest in efficiency, that interest is not grounds for abridging below-median income debtors' substantive rights to use their "excess" refund income to finance reasonably necessary expenses for their maintenance and support. At bottom, the provisions in a local chapter 13 plan must be procedural, not substantive. *See In re Adams*, 734 F.2d at 1099; Keith M. Lundin, Lundin on Chapter 13 § 72.5 ¶ 23, https://lundinonchapter13.com/content/section/72.5 (last updated August 3, 2020) (observing that local chapter 13 plans that prescribe "specific treatments" for tax refunds tend to require bankruptcy courts to make "substantive decisions" under the Code).

Debtor's case is a good example of how Section 4.1's categorical rule could abridge a below-median income debtor's substantive right to use her "excess" refund amount for reasonably necessary expenses for her maintenance and support. Here, Debtor's "excess" tax refund amount is $1,261. Debtor's initial Schedule J, submitted in December 2017, estimated her expenses as: $360 for food and housekeeping supplies; $0 for clothing, laundry, and dry cleaning; $40 for personal care products and services; and $0 for entertainment, clubs, recreation, newspapers, magazines, and books. Those expenses are well below the IRS's National Standards ("National Standards") for an above-median income chapter 13 debtor in a household of three: $803 for food and housekeeping supplies; $193 for apparel & services;

No. 19-50982

$73 for personal care products & services; and $309 for miscellaneous.[3] *See* 11 U.S.C. §§ 1325(b)(3), 707(b)(2)(A)–(B). But Debtor's projected expenses in her amended Schedule J—which were adjusted to "offset" the $3,261 refund that she amortized on her amended Schedule I—are still far below the National Standards.[4] Accordingly, we find it entirely plausible that Debtor will use her "excess" tax refund of $1,261 for expenses that are reasonably necessary for her family's maintenance and support.

Because Section 4.1 abridges Debtor's substantive right to use the amount of her tax refund in excess of $2,000 in accordance with Code § 1325(b)(2) and *Lanning's* guidance for below-median income debtors, we hold that it is invalid. *See* 560 U.S. at 510.

## V.

Our holding today neither endorses nor rejects the practice of amortizing a chapter 13 debtor's refund on Schedule I. Here, Debtor's motive in amortizing her tax refund on Schedule I—and, in turn, "offsetting" that amount on Schedule J—is clear: she was attempting to avoid Section 4.1's categorical rule, which she recognized violated her substantive right as a below-median income debtor to retain any refund income reasonably necessary to be expended for her maintenance and

---

[3] Department of Justice U.S. Trustee Program, *Means Testing Information: IRS National Standards for Allowable Living Expenses (Cases Filed Between November 1, 2017 and March 31, 2018, Inclusive)*, https://www.justice.gov/ust/means-testing (in the box entitled "Data Required for Completing the 122A Forms and the 122C Forms," choose option "[11/1/2017 to 3/31/2018, Inclusive]" in drop-down list and click "Go"; then click "National Standards" hyperlink under the heading "2. National Standards: Food Clothing & Other Items").

[4] As discussed *supra*, Debtor's amended Schedule J, submitted on February 13, 2018, estimated her expenses as: $410 for food and housekeeping supplies; $50 for clothing, laundry, and dry cleaning; $40 for personal care products and services; and $36 for entertainment, clubs, recreation, newspapers, magazines, and books.

support. We have invalidated Section 4.1, so we need not confront whether Debtor's amortization was sound.[5] Nor do we need to address Trustee's argument that Debtor's First Amended Plan was not feasible. Any argument relating to Debtor's First Amended Plan is moot, as we now remand to allow Debtor to submit a new plan.[6]

Lastly, Debtor asks that we instruct the Western District to adopt a certain approach to tax refunds but cites no authority for our ability to do so. Bankruptcy Rule 3015.1 clearly provides that "*a district*" may promulgate a "Local Form for a plan filed in a chapter 13 case." Fed. R. Bankr. P. 3015.1 (emphasis added). Thus, as we are not aware of any authority allowing us to dictate that a district adopt specific provisions in its local chapter 13

---

[5] Contrary to Debtor's assertion, this case is distinguishable from the Seventh Circuit's decision in *Marshall v. Blake*, 885 F.3d at 1075–81, because *Blake* did not involve the threshold issue here, which is the validity of a specific local provision. The primary issue in *Blake* was whether a below-median income chapter 13 debtor who received a refundable tax credit was permitted to amortize that refund as income. *See id.* at 1075–76.

[6] Additionally, Trustee argues that: (i) Debtor submitted her First and Second Amended Plans in bad faith, and (ii) we must also consider Section 7.1 of the Local Plan if we hold Section 4.1 invalid. Trustee did not raise either of these arguments to the bankruptcy court, so we may consider them forfeited. *See Butler Aviation Int'l, Inc. v. Whyte* (*In re Fairchild Aircraft Corp.*), 6 F.3d 1119, 1128 (5th Cir. 1993), *abrogated on other grounds by Tex. Truck Ins. Agency, Inc. v. Cure* (*In re Dunham*), 110 F.3d 286, 288–89 (5th Cir. 1997) ("[An] argument must be raised to such a degree that the trial court may rule on it."). If we were to consider Trustee's bad-faith argument, we note that where the bankruptcy court does not make a good- or bad-faith finding, "[w]e observe the sensible rule that 'debtors are not in bad faith merely for doing what the Code permits them to do.'" *Brown v. Viegelahn* (*In re Brown*), 960 F.3d 711, 718 (5th Cir. 2020) (quoting *Beaulieu v. Ragos*, 700 F.3d 220, 227 (5th Cir. 2012)). But the actions that Trustee alleges Debtor took in bad faith were simply Debtor's efforts to circumvent a rule that we now find invalid: if anything, Debtor did just what the Code told her to do. As for Trustee's argument regarding Section 7.1, we recognize that because that provision is not at issue in this appeal, to deem it invalid would be to issue an improper advisory opinion on a controversy not before the court. *See Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976) ("Article III courts have jurisdiction over actual controversies; they are not permitted the luxury of issuing advisory opinions.").

No. 19-50982

plan, we decline to do so today. *See Steinacher v. Rojas* (*In re Steinacher*), 283 B.R. 768, 774 (B.A.P. 9th Cir. 2002) (holding local rule invalid as conflicting with the Bankruptcy Code but staying silent on further instructions).

## VI.

For the foregoing reasons, we VACATE the bankruptcy court's confirmation of Debtor's Revised Plan and REMAND to allow Debtor to file a new plan consistent with this decision.