**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2263

SHEILA ANN TRANTHAM,

> Debtor – Appellant,

v.

STEVEN G. TATE,

> Trustee – Appellee.

------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS; NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER,

> Amici Supporting Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Max O. Cogburn, Jr., District Judge.  (1:22−cv−00076−MOC)

Argued:  May 8, 2024                    Decided:  August 13, 2024

Before DIAZ, Chief Judge, WILKINSON, Circuit Judge, and MOTZ, Senior Circuit Judge.

Reversed and remanded by published opinion.  Chief Judge Diaz wrote the opinion in which Judge Wilkinson and Senior Judge Motz joined.  Judge Wilkinson wrote a concurring opinion.

2

Robert Todd Mosley, MOSLEY LAW FIRM, P.C., Asheville, North Carolina, for Appellant. Bonnie Keith Green, THE GREEN FIRM, PLLC, Charlotte, North Carolina, for Appellee. Richard Preston Cook, RICHARD P. COOK, PLLC, Wilmington, North Carolina, for Amici Curiae.

———————————

DIAZ, Chief Judge:

Sheila Ann Trantham filed a Chapter 13 bankruptcy plan proposing that the bankruptcy estate's property vest in her at plan confirmation. Although the Bankruptcy Code permits such a provision, the Trustee objected because the local form plan adopted by the bankruptcy court requires that the estate's property vest when the court enters a final decree.

The bankruptcy court held that a debtor can't propose a plan that contradicts the local form's default vesting provision. The district court agreed. We do not. So we reverse the district court's order, and remand for further proceedings.

I.

Trantham petitioned for Chapter 13 bankruptcy in the Bankruptcy Court for the Western District of North Carolina. Under that Chapter, the debtor proposes a plan that uses her future income to repay a portion of her debts. *See* 11 U.S.C. §§ 1321–1322(a). If the bankruptcy court confirms the plan, and the debtor completes all payments, then the court discharges any debt provided for by the plan (unless otherwise exempt). *See id.* § 1328. After discharge, the court enters its final decree, which closes the debtor's case. *Cf., e.g.*, *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 298 (4th Cir. 2017).

Trantham proposed a repayment plan using the bankruptcy court's required form plan, Local Form 4. The Form's vesting provision says that "[a]ll property of the Debtor remains vested in the estate and will vest in the Debtor upon entry of the final decree." J.A.

3

61. Trantham struck through that provision and instead proposed that the property of the estate vest at confirmation.

But the Trustee[1] objected to Trantham's plan because her changes to the vesting schedule "contradict[ed] the plan form language" in Local Form 4. J.A. 64. The bankruptcy court sustained the objection.

The court acknowledged that debtors can propose nonstandard provisions that deviate from the local form. And it found that Trantham's proposed vesting provision was "not contrary to" the Bankruptcy Code. J.A. 71. But the court explained that default provisions are essential for "efficiency and consistency" and that the Form's prewritten vesting provision was the court's "long-standing policy." J.A. 72. Because Trantham "provide[d] no explanation supporting her choice to vest property of the estate at confirmation and [did] not demonstrate[] why the Local Form should be changed in this case," the court held that Trantham's changes to the Form were "inappropriate." J.A. 72.

Trantham amended her plan to conform with Local Form 4, although she expressly reserved her right to appeal the court's decision post-confirmation. The bankruptcy court later confirmed the amended plan.

Trantham appealed, and the district court affirmed. The district court explained that many "risks and practical problems would arise" if property vested in the debtor at

---

[1] A trustee acts as the administrative officer of the bankruptcy case. *See* 11 U.S.C. § 1302; *Van Arsdale v. Clemo*, 825 F.2d 794, 797–98 (4th Cir. 1987). Her role is to advise the bankruptcy court with respect to the proposed plan and to oversee the performance of the confirmed plan, such as by ensuring that the debtor makes timely payments, acting as the disbursing agent, and advising the debtor on case-related matters. *See* § 1302(b).

confirmation, noting that the property would be vulnerable to creditors and the trustee would lack sufficient oversight. *Trantham v. Tate*, 647 B.R. 139, 145–46 (W.D.N.C. 2022). And the court reasoned that if property vested in the debtor at confirmation, then 11 U.S.C. § 1306(a)'s mandate that the property of the estate include the debtor's earnings and properties acquired between petition and final decree would be "rendered meaningless." *Id.* at 146–47.

So the district court held that any plan that includes a nonstandard provision that contradicts the Form's default vesting provision "cannot be confirmed." *Id.* at 145. But it also held that Trantham lacked standing to appeal the bankruptcy court's ruling because she hadn't shown any injury arising from having to conform to the Form's default vesting provision.

This appeal followed.

## II.

### A.

We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards that the district court applied. *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020). Thus, "we review the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and any discretionary decisions for abuse of discretion." *Id.*

### B.

5

Before we consider the merits, some context about vesting is necessary. When a debtor files for Chapter 13 bankruptcy, an estate is created that consists of any property (with few exceptions) in which she holds a legal or equitable interest. *See* 11 U.S.C. §§ 541(a), 1306(a). The estate also includes certain property and earnings that the debtor acquires between filing and entry of a final decree. *Id.* § 1306(a). Creditors can't pursue collection actions against any property of the estate. *See id.* § 362.

The Code permits the debtor to include a vesting provision in her plan. *See id.* § 1322(b)(9). The debtor can provide for vesting "on confirmation of the plan or at a later time, in the debtor or in any other entity." *Id.* But if the debtor says nothing about vesting, and the order confirming the plan is silent, then the Code's default rule is that property vests in the debtor at confirmation. *Id.* § 1327(b).

The debtor generally remains in possession of all property of the estate. *See id.* § 1306(b). But the debtor can't "use, sell, or lease" that property outside of "the ordinary course of business" unless she receives permission from the court after "notice and a hearing." *See id.* §§ 363(b), 1303.

On the other hand, when property vests in the debtor, it vests "free and clear of any claim or interest of any creditors provided for by the plan." *See id.* § 1327(b)–(c). While the property is no longer protected from creditors, the debtor is free to use, sell, or lease that property as she sees fit. That said, we've held that when a debtor experiences a "substantial and unanticipated" change of income from selling property that vested in him at plan confirmation, the trustee maintains the ability to seek to modify the debtor's plan

6

so that unsecured creditors can recoup such income. *See Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 154 (4th Cir. 2007).

III.

Trantham raises two issues on appeal. First, she disputes the district court's ruling as to standing. Second, she argues that the bankruptcy court violated the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure by holding that Local Form 4's vesting provision is mandatory. We address each contention in turn.

A.

Because standing is jurisdictional, we start there. *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023). We review a district court's decision on appellate standing de novo. *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 177 (4th Cir. 2023).

In the bankruptcy context, this court has historically required that the appellant establish both constitutional standing and prudential standing, the latter of which is satisfied by showing that she is a "person aggrieved" by the bankruptcy court's order. *Cf. id.* We conclude that Trantham satisfies the former and doesn't need to satisfy the latter.

1.

Start with constitutional standing. The Constitution limits federal courts to hearing cases in which the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct and (3) that is likely to be redressed by a favorable judicial decision." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (cleaned up) (quoting

7

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). At issue here is whether Trantham suffered an injury in fact. She has.

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "bare procedural violation" can't satisfy constitutional standing. *Id.* at 341. But a statutory violation coupled with a "separate harm" or a "materially increased risk of another harm" can. *See O'Leary*, 60 F.4th at 243; *accord Spokeo*, 578 U.S. at 342 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."). When standing depends on a risk of injury, that risk must be "certainly impending" or "substantial." *Kenny*, 885 F.3d at 287 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Trantham alleges that the bankruptcy court ignored her right to file a plan of her choosing under 11 U.S.C. §§ 1321 and 1322 and to have her plan confirmed so long as it satisfies all Code requirements. And as a result, she claims that her property has been diminished and her procedural burdens have increased.

Under Trantham's plan, her property would have vested in her "free and clear" at plan confirmation. *See* 11 U.S.C. § 1327; *supra* Part II.B. But the bankruptcy court required that vesting occur at final decree, which has yet to happen. So Trantham's property remains encumbered by the interests and claims of her creditors, and her ability to use it outside the ordinary course of business depends on her seeking leave of court. *See* 11 U.S.C. §§ 363(b), 1303; *supra* Part II.B.

8

To obtain such relief, a debtor must schedule a hearing, *cf.* Fed. R. Bankr. P. 9006(d) (requiring that interested parties have at least seven days' notice of a hearing), and pay applicable fees, *see, e.g.*, *Bankruptcy Court Miscellaneous Fee Schedule*, U.S. Cts., https://www.uscourts.gov/services-forms/fees/bankruptcy-court-miscellaneous-fee-schedule [https://perma.cc/S9MK-KYS3] (last visited June 24, 2024) (requiring a $199 filing fee for a motion to sell property of the estate); *Disclosure to Debtor of Attorney's Fees Procedure for Chapter 13 Cases in the United States Bankruptcy Court for the Western District of North Carolina*, U.S. Cts., https://www.ncwb.uscourts.gov/sites/ncwb/files/forms/Local%20Form%203%20Sept%202021.pdf [https://perma.cc/5KX7-JFYV] (last visited June 24, 2024) (establishing a $450 attorney fee for a motion to sell property). This amounts to an injury in fact.

Beyond the court's order affecting Trantham's procedural rights under the Code, Trantham suffered a "separate harm": the loss of ownership and control over her estate. *Cf., e.g.*, *Breland v. United States (In re Breland)*, 989 F.3d 919, 922 (11th Cir. 2021) (holding that a Chapter 11 debtor's loss of authority over his estate, which he suffered when the bankruptcy court removed him as the debtor-in-possession, constituted an injury in fact). And she suffered a "materially increased risk of another harm": increased procedural and economic burdens.

On this point, we find the Ninth Circuit's decision in *In re Sisk*, 962 F.3d 1133 (9th Cir. 2020), instructive. There, a group of Chapter 13 debtors altered the district's form

plan, which called for a fixed-duration plan, to propose estimated-duration plans.[2]  *See id.* at 1138–40.  The bankruptcy court denied confirmation, even though the plans weren't inconsistent with the Code, and required the debtors to conform their plans to the form plan.  *Id.* at 1140.

The Ninth Circuit held that the debtors had standing to appeal the court's order.  *Id.* at 1142–43. It reasoned that under their original plans, the debtors could have exited bankruptcy as soon as they paid off their debts, but under their amended ones, they needed to either continue in bankruptcy for a fixed duration or move to modify their plans.  *Id.* at 1142.  The debtors thus faced the risk of making more payments than they would have under their original plans, and of creditors' seeking plan modifications that increased the amounts owed.  *Id.*  These increased procedural burdens and risks of greater costs amounted to an injury in fact.  *Id.*

So too here.  Trantham's risk of increased burdens and her loss of control over her estate are sufficiently concrete for constitutional standing.

---

[2] A fixed-duration plan commits the debtor to make set payments for a certain number of months.  *See Sisk*, 962 F.3d at 1138–39, 1142.  The debtor is locked into the duration, even if she satisfies her priority and secured obligations and any required dividends to unsecured creditors before the duration lapses.  *See id.* at 1142.  And so long as the plan remains in effect, interested parties can seek to modify the debtor's plan to increase the amounts owed to unsecured creditors.  *See id.*  Consequently, the debtor could be required to make additional payments beyond those required by the original plan.  *See id.*  In contrast, an estimated-duration plan predicts the number of months that it will take for the debtor to complete the payments.  *See id.* at 1138–39, 1142.  The debtor can request discharge, though, as soon as she satisfies her priority and secured obligations and any required dividends to unsecured creditors.  *See id.* at 1142.

And Trantham also satisfies the requirements for causation and redressability. She alleges that she was directly harmed by the bankruptcy court's ruling that she amend her plan to include Local Form 4's default vesting provision, and this court can redress this alleged harm, as reversing the court's order would allow Trantham's original plan to be confirmed. *Cf. id.* at 1143 n.4.

2.

Constitutional standing doesn't end the story, though. The Trustee argues that Trantham must also satisfy this court's prudential standing test. Looking again to *Sisk*, we disagree.

Prudential standing requires that the appellant is a "person aggrieved"—that is, "directly and adversely affected pecuniarily"—by the bankruptcy court's order. *U.S. Trustee for W.D. Va. v. Clark (In re Clark)*, 927 F.2d 793, 795 (4th Cir. 1991) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir. 1983)). The appellant meets this requirement when the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights." *Bestwall*, 71 F.4th at 177–78 (quoting *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 371 (3d Cir. 2022)).

Trantham contends that the Supreme Court rejected the concept of prudential standing in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). But even if that standard applies, Trantham argues that she satisfies it for the same reasons that she satisfies constitutional standing.

In *Lexmark*, the Court held that lower courts shouldn't limit their jurisdiction for prudential reasons and affirmed their "virtually unflagging" duty to exercise the

11

jurisdiction that Congress granted them. 572 U.S. at 126–27 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). Still, several of our sister circuits have held that the person-aggrieved test survived *Lexmark*. *See Highland Cap. Mgmt. v. Pachulski Stang Ziehl & Jones, L.L.P.*, 74 F.4th 361, 368–69 (5th Cir. 2023); *cf. Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Hair Ford, Inc.)*, 764 F.3d 1321, 1325 n.3 (11th Cir. 2014) (reclassifying the person-aggrieved test as a permissible zone-of-interest test, which asks who can sue under the substantive statute, post-*Lexmark*); *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC (In re Petrone)*, 754 F. App'x 590, 591 (9th Cir. 2019) (same). *But cf. Litton Loan Servicing, L.P. v. Schubert (In re Schubert)*, No. 21-3969, 2023 WL 2663257, at *2–3 (6th Cir. Mar. 28, 2023) (predicting, without deciding, that *Lexmark* "likely dooms the person-aggrieved test as a jurisdictional bar," although the test may survive as a zone-of-interest test).

It's an "open question" in this court. *Kiviti v. Bhatt*, 80 F.4th 520, 534 n.11 (4th Cir. 2023). *But see Bestwall*, 71 F.4th at 177–78 (applying the person-aggrieved test without considering *Lexmark*'s effect). But it's one we can leave for another day.

Again, the Ninth Circuit's decision in *Sisk* guides our analysis. There, the court recognized that the purpose of the prudential standing test was to "limit[] the appeals of remote non-parties." 962 F.3d at 1143. But that purpose, the court found, "is not implicated when the appellant is the party below and remains integrally connected to the issues on appeal." *Id.* Since the debtors were "the only parties below" and "brought the filings—their own Chapter 13 plans—at issue [on] appeal," the court held that they didn't need to establish prudential standing. *Id.*

12

We agree with the Ninth Circuit's carve out. And because Trantham, like the debtors in *Sisk*, proposed the plan at issue and was a party below, we too hold that she doesn't need to satisfy the person-aggrieved test.

In any event, Trantham *is* a person aggrieved. The bankruptcy court's order resulted in Trantham's loss of control over her estate and risk of increased burdens, in addition to contravening her rights under the Code. *See supra* Part III.A.1; *Bestwall*, 71 F.4th at 177–78; *see also, e.g.*, *Westwood Cmty. Two Ass'n v. Barbee (In re Westwood Cmty. Two Ass'n)*, 293 F.3d 1332, 1335 (11th Cir. 2002) (explaining that a person aggrieved is someone who has a "financial stake" in the order being appealed).

### B.

We turn now to the merits. Trantham argues that the bankruptcy court violated the Code and Federal Rules by holding that Local Form 4's vesting provision is mandatory. Although we find that the bankruptcy court's use of a default vesting provision is permissible, we agree with Trantham that requiring that default provision in her case was not.

### 1.

We first consider whether the bankruptcy court's use of a default vesting provision is per se invalid.

Congress delegated to the Supreme Court the power to make rules of practice and procedure that govern bankruptcy proceedings. 28 U.S.C. § 2075. Such rules, though, can't "abridge, enlarge, or modify any substantive right." *Id.*

13

The Court issued the Federal Rules of Bankruptcy Procedure, and there permitted district courts to enable bankruptcy judges to make local rules to govern proceedings within their jurisdictions. Fed. R. Bankr. P. 9029(a)(1). Local rules must adhere to certain rulemaking procedures and be "consistent with—but not duplicative of—Acts of Congress and [the Federal Rules]." *Id.* Generally, local rules also can't "prohibit or limit the use of the Official Forms." *Id.* But Chapter 13 cases are the exception.

Form plans in Chapter 13 cases exist to promote efficiency and aid creditors and courts in assessing and enforcing plans. *Cf.* Comm. on Rules of Prac. & Proc., Report of the Judicial Conference 4–5 (2017). To further this intent, local rules can require that debtors use a local form for Chapter 13 plans in lieu of the one required by the Official Forms. Fed. R. Bankr. P. 3015.1. The local form, though, must satisfy the conditions prescribed by the Federal Rules. *Id.* As relevant here, this includes allowing a debtor to propose nonstandard provisions. Fed. R. Bankr. P. 3015.1(e)(1). And any rules included in the local form must be procedural. *See, e.g.*, *Diaz v. Viegelahn (In re Diaz)*, 972 F.3d 713, 719 (5th Cir. 2020). In other words, the form plan can dictate *how* a debtor proposes her plan, but not *what* she proposes in it.

The Code doesn't require that the debtor include a vesting provision in her plan. *Compare* 11 U.S.C. § 1322(a) (establishing what the plan "shall" provide), *with id.* § 1322(b) (establishing what the plan "may" provide). But if she includes one, then vesting can occur "on confirmation of the plan or at a later time, in the debtor or in any other entity." *Id.* § 1322(b)(9).

14

Local Form 4's default provision calls for vesting at final decree, which is "at a later time" than plan confirmation. The Form also allows the debtor to propose a nonstandard provision that "deviat[es]" from the default one. J.A. 61; *see In re Shay*, 553 B.R. 412, 415–16 (Bankr. W.D. Wash. 2016) (holding that a local form's vesting provision was permissible because the debtor could propose a different one in the form's nonstandard provision section).

But as we explain, by making the Form's default vesting provision mandatory, the bankruptcy court abridged Trantham's right to propose a plan with her preferred vesting provision.

2.

We start from the premise that it's the debtor's "exclusive right to propose plans." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015). While the Code makes a handful of provisions mandatory, most are elective. 11 U.S.C. § 1322(a)–(b). And the Code permits the debtor to "include any other appropriate provision not inconsistent with [the Code]." *Id.* § 1322(b)(11). Taken together, the Code grants the debtor considerable flexibility to design a plan based on her circumstances and preferences. *See Sisk*, 962 F.3d at 1145.

As we've stated, this flexibility includes the debtor's ability to include a vesting provision in her plan that vests property of the estate "on confirmation of the plan or at a later time, in the debtor or in any other entity." § 1322(b)(9).

Outside of § 1322(b)(9), nothing in the Code expressly limits the debtor's ability to propose a tailored vesting provision in her plan. And so long as her chosen provision is consistent with the Code and isn't otherwise proposed in bad faith or forbidden by law, the

15

bankruptcy court "shall confirm" the plan with that tailored provision. *See* 11 U.S.C. § 1325(a); *cf. Dep't of Soc. Servs. v. Webb*, 908 F.3d 941, 946 (4th Cir. 2018) (stating that "shall" under another Chapter 13 provision is a "clear statutory direction" that must be followed, absent explicit language granting an exception). Indeed, even if a creditor objected to the plan because of the vesting provision, the bankruptcy court may confirm the plan if either (1) the amount to be paid to the creditor's claim under the plan is equal to or greater than the claim amount, or (2) the plan applies all the debtor's disposable income to plan payments during the plan. *Id.* § 1325(b)(1).

Trantham proposed a plan that provided for vesting at confirmation. The bankruptcy court found that this provision was expressly permitted by § 1322(b)(9), and the court didn't find that it was made in bad faith or was unlawful. Trantham's plan also applied all her disposable income to plan payments for the plan's duration. Yet the bankruptcy court denied confirmation because Trantham's proposed vesting provision was contrary to Local Form 4.

This was error. In so doing, the court stripped Trantham of her right to propose a plan of her choosing with a tailored vesting provision and to have her plan confirmed.

The same is true of the bankruptcy court's decision to reject Trantham's proposed vesting provision because she didn't explain why she diverged from Local Form 4.

The Code doesn't require that the debtor justify her plan's permissive provisions when she files. *See id.* § 1322(b). And the Code's other provisions and the Federal Rules suggest that the debtor must do so only when a party in interest objects, *see id.* §§ 1305(b), 1307(c), 1325(b)(1) (placing the burden on the trustee and creditors to review

16

the plan and lodge objections); *First Union Com. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1318 (4th Cir. 1996) (same), or the court so requires so that it can assess whether the plan has been proposed in good faith, *cf.* Fed. R. Bankr. P. 3015(f) (providing that the bankruptcy court "may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues"); *Deans v. O'Donnell*, 692 F.2d 968, 968 & n.1 (4th Cir. 1982).

Critically, only a substantive objection to the proposed plan can trigger the debtor's need to defend her choice. The objecting party must contend that the plan provision doesn't comply with the requirements of confirmation under 11 U.S.C. § 1325(a). *Cf. Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995) ("[I]n reviewing the plan for confirmation, the Chapter 13 trustee may object if the plan fails to conform to all requirements in the Bankruptcy Code . . . .").

In short, the debtor is the principal architect of her plan. *Cf. Bullard*, 575 U.S. at 505. "[O]ther than the right to object on certain specified bases in the Bankruptcy Code, a Chapter 13 plan is a rather one-sided affair." *In re Turner*, 558 B.R. 269, 280 (Bankr. N.D. Ill. 2016)). If the trustee objects, it is she who bears the initial burden of "going forward with evidence as to [her] objection." *E.g.*, *In re Moore*, 635 B.R. 451, 453 (Bankr. D.S.C. 2021); *accord Shortridge v. Ruskin (In re Shortridge)*, 65 F.3d 169 (6th Cir. 1995) (per curiam) (unpublished table decision) (explaining that "a party objecting to confirmation bears the burden of proof" and "vague and unsupported allegations cannot impede confirmation of the plan").

17

The Trustee's objection here wasn't substantive. The Trustee contended that Trantham's proposed vesting provision was contrary to the bankruptcy court's longstanding practice of requiring a different provision—not that it violated the requirements of confirmation. So requiring that Trantham justify her proposed vesting provision in response to this objection contravened her substantive rights under the Code.

The bankruptcy court determined that Trantham's attempt to diverge from the Form's vesting provision "without explanation [was] inappropriate." J.A 72. The district court, though, held that *any* divergence from the default provision "is inappropriate" and "cannot be confirmed." *Trantham*, 647 B.R. at 145. The district court explained that the Code and policy considerations "all support the conclusion that property should not be vested back to the debtor at confirmation, but rather, at a later time." *Id.* at 144–47.

Of course, our review on appeal is of the bankruptcy court's decision—not the district court's. *See, e.g.*, *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 745 (4th Cir. 1996). Still, we reject the district court's analysis.

For one, the Code's default vesting provision calls for vesting at confirmation. 11 U.S.C. § 1327(b). So Congress itself disagrees with the district court's contention that vesting at confirmation is contrary to Chapter 13's purpose and inconducive to its implementation. In any event, general policy considerations can't trump the debtor's substantive rights under the Code. *See, e.g.*, *Diaz*, 972 F.3d at 719. Rather, such concerns must be assessed case-by-case. *Cf. Steinacher v. Rojas (In re Steinacher)*, 283 B.R. 768, 774 (B.A.P. 9th Cir. 2002) ("While [a certain local rule] reflects an understandable attempt to redress abuses caused by repetitive filings, such abuses should be addressed by case-by-

18

case dismissals for cause under [§] 1307(c) . . . or by case-by-case denial of confirmation under [§] 1325(a)(3) . . . .").

3.

A sister circuit holds otherwise, but we're not persuaded.

Beginning in *In re Steenes*, the Seventh Circuit examined whether the bankruptcy court's use of a form confirmation order for Chapter 13 cases that retained property in the estate for the plan's duration violated the Code. 918 F.3d 554, 556 (7th Cir. 2019). Over a creditor's objections, the bankruptcy court imposed the form order's vesting provision on the ground that it was the court's routine practice. *Id.* at 557. The Seventh Circuit, though, held that such an approach conflicts with 11 U.S.C. § 1327(b), which provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." *Steenes*, 918 F.3d at 557–58.

The court explained that § 1327(b) establishes "the norm" that property vests in the debtor at confirmation. *Id.* at 557. And while § 1327(b) grants bankruptcy courts the discretion to depart from this norm, the court continued, "the exercise of this discretion—like the exercise of all judicial discretion—requires good reason." *Id.* So because the bankruptcy court hadn't entered a "case-specific order, supported by good case-specific reasons" for inverting the statutory norm, the Seventh Circuit concluded that its application of the form order violated the Code. *Id.*

The bankruptcy court soon after eliminated the inverted-norm provision from its form order. *In re Cherry*, 963 F.3d 717, 718 (7th Cir. 2020). But on its form plan, it added

19

that same provision as a checkbox option that debtors could elect to include. *Id.* Relying on *Steenes*, creditors objected to plans with that box checked. *Id.* But the bankruptcy court determined that *Steenes*'s holding applied only to the judiciary, and that debtors, in contrast, "need not explain" their choice of vesting provision. *Id.*

The Seventh Circuit in *Cherry* disagreed. *Id.* at 719–20. It explained that § 1327(b) "treats 'a provision in the plan' and 'the order confirming the plan' identically." *Id.* at 719. And therefore, "[w]hether the debtor (by checking a box) or the judge (through a form order) proposes the departure from the statutory norm does not affect the need for justification." *Id.*

We can't agree. Section 1327(b), when read in isolation, may not distinguish between vesting provisions proposed by the debtor versus the court. But we don't interpret statutory text in a vacuum. And Chapter 13, when read in its entirety, affords priority to the debtor's proposed provisions.

We emphasize that it's the debtor's right alone to file for bankruptcy and propose a plan. *See* 11 U.S.C. §§ 1321–1322. And the grounds on which the bankruptcy court can reject her plan are limited. *See id.* § 1325; *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017) ("By creating a finite list of affirmative requirements for a plan's confirmation, we assume that Congress intended to exclude other requisites from being grafted onto [§] 1325(a)." (cleaned up) (quoting *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002))). To remain consistent with the Code, we must read § 1327(b) as preserving the debtor's right to propose her own vesting provision, without having to justify it.

20

That said, when the debtor foregoes that right, § 1327(b) doesn't grant the bankruptcy court license to do so for her. Again, it's the debtor's exclusive right to propose a plan, and the Code doesn't permit the court to fill in the gaps at will. Indeed, even when the bankruptcy court sustains an objection to a plan, it can't amend the plan itself. Instead—and as happened here—the debtor must do so.[3]

We hold that the bankruptcy court can't reject a plan's vesting provision other than for the reasons allowed by the Code. And the Code doesn't permit the bankruptcy court to reject a plan's vesting provision just because the court's practice is to require a different provision. Rather, § 1327(b) requires a "case-specific order, supported by good case-specific reasons." *Steenes*, 918 F.3d at 558.[4]

## IV.

Form plans for Chapter 13 cases no doubt increase efficiency and facilitate enforcement. Even so, such plans can't "abridge, modify, or enlarge" the debtor's substantive rights under the Code. 28 U.S.C. § 2075. Because the bankruptcy court's application of its Local Form 4 did so here, we must reverse. On remand, the bankruptcy

---

[3] The trustee and creditors can seek to modify a plan when the debtor's income unexpectedly increases after selling property that vested in him at confirmation. *See Murphy*, 474 F.3d at 154. In such a case, a court's order granting a motion to modify a plan would, practically speaking, alter the vesting provision prescribed in the original plan, as the increased income would no longer be vested in the debtor "free and clear," but allocated to creditors through bankruptcy. Section § 1327(b) anticipates such a situation.

[4] We don't mean to suggest that bankruptcy courts—and interested parties—have no substantial role to play in reviewing a debtor's proposed plan. While that role may be circumscribed in the manner we've described, it remains meaningful nonetheless.

21

court can assess whether Trantham's proposed vesting provision should be confirmed, or

whether the court should reject it for a reason permitted by the Code.

*REVERSED AND REMANDED*

WILKINSON, Circuit Judge, concurring:

I concur in the remand of this case for further proceedings. I agree with the majority that courts may only reject a debtor's preference for nonstandard plan provisions for "reasons allowed by the Code." Maj. Op. at 21; *see* 11 U.S.C. § 1325. But that truism does not transform bankruptcy courts into rubber stamps for whatever plan a Chapter 13 debtor may propose. The absolutist positions taken by the district court and the debtor here both neglect an essential ingredient in the bankruptcy process: "[N]egotiation and collaboration among numerous parties." *In re Ottawa Bus Serv., Inc.*, 498 B.R. 281, 288 (D. Kan. 2013). The principle of collaboration was lacking in this case.

Both Trantham and the district court present control over Chapter 13 plan provisions in contradictory terms. The debtor suggests that the broad choice of plan provisions allowed her under § 1322(b) is subject only to the narrowest scope of review under § 1325(a). *See* Appellant's Opening Br. 10–11. The district court, by contrast, views its reviewing authority in spacious and indeed unimpeachable terms. *See Trantham v. Tate*, 647 B.R. 139, 148 (W.D.N.C. 2022). The truth, as it so often does, lies somewhere in the middle. *See In re Am.-CV Station Grp., Inc.*, 657 B.R. 904, 907 (Bankr. S.D. Fla. 2024) ("Chapter 11 of the Bankruptcy Code is most successful when parties, even those who identify as adversaries, work collaboratively, or at least cooperatively, towards an outcome.").

The specific provision at the heart of this case involved the time of vesting. In Trantham's world, courts play only the most minimal role in reviewing debtors' plan provisions, absent the most explicit congressional mandate for intervention. *See*

23

Appellant's Opening Br. 11. This, to my mind, carries matters too far. It leaves little or no meaningful role for bankruptcy courts, trustees, and creditors to play. They might as well not even be there.

Where Congress has drafted broad criteria for bankruptcy plans, courts must have some discretion in assessing whether those requirements are met. To take but one example, bankruptcy courts may determine what constitutes a "good faith" proposal under § 1325(a)(3). *See* Maj. Op. at 15–17; *see also In re Tumbleson*, 28 B.R. 663, 664 (D. Colo. 1983). This inescapably will require the exercise of good judgment. *See In re Lavilla*, 425 B.R. 572, 576 (Bankr. E.D. Cal. 2010) (citing 11 U.S.C. § 1325(a)(3); Fed. R. Bankr. P. 3015(f)) ("The Bankruptcy Code does not define 'good faith.' The court must consider the totality of the circumstances when making the 'good faith' determination."). And given that concepts such as "good faith" have long histories in equity, this exercise of judgment is also in keeping with bankruptcy courts' role as "courts of equity." *Young v. United States*, 535 U.S. 43, 50 (2002). And it should come as no surprise that the Bankruptcy Code does not allow the person who took on debts beyond her means to unilaterally dictate every detail of how those debts will be repaid. *See In re McClaflin*, 13 B.R. 530, 534 (Bankr. N.D. Ill. 1981) (rejecting that "Congress intended a Voluntary Petition in Chapter 13 to be a carte blanche document permitting a debtor to deal with his creditors in any manner he sees fit").

But just as Trantham's position swings too far in one direction, the district court's swung too far in the other. The district court took the view that bankruptcy courts not only retain discretion to review Chapter 13 plans, but can reject any plan that alters the local-

24

form plan simply because it includes "a contradicting nonstandard provision." *Trantham*, 647 B.R. at 145. That view is incorrect. If the debtor assigns too limited a role to the other players in the bankruptcy process, the district court assigned to itself a plenary and arbitrary one. The Bankruptcy Code provides that debtors possess "the valuable exclusive right to propose plans, which [they] can modify freely." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015) (citing 11 U.S.C. §§ 1321, 1323). This right would not be "valuable," but illusory if the debtor's preferences were deemed irrelevant. As the majority points out, courts may not wield "general policy considerations" to trump a debtor's proposed terms. Maj. Op. at 18. But the court appropriately leaves the door open to rejecting for good reason proposed plan provisions on "case-by-case" grounds. *Id.*

We should not make ourselves a party to rigidity. Intractability is a vice in bankruptcy proceedings, and collaboration a virtue. The Supreme Court has rightly encouraged debtors "to work with creditors and [] trustee[s] to develop a confirmable plan as promptly as possible." *Bullard*, 575 U.S. at 505. Courts should likewise embrace this spirit of collaboration when overseeing the creation and approval of Chapter 13 plans.

The word of Congress on this matter is definitive. Of that there is no doubt. But Congress flies at a height of 30,000 feet up. There remains a role for soldiers on the ground. There must be some medium of transmission from air to earth. As, for example, the role envisioned for district courts in ruling on summary judgment and other FRCP motions in the typical civil suit. The medium of transmission in bankruptcy is one of negotiation and collaboration between the various parties which collectively give meaning to the

25

congressional decree. Those values represent a balance between the various interests at play in the bankruptcy process which the participants would be well-advised to respect.